## WINFIELD S. CUTTS *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    January 13, 14, 1909. — June 21, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Negligence*, Street railway, Elevated railway.   *Street Railway.   Evidence*, Relevancy and materiality, Opinion: expert.   *Witness*, Experts.

At the trial of an action by a passenger against a street railway company to recover for injuries alleged to have been caused by the plaintiff's being thrown from the front platform of a closed electric car as, after ascending for two hundred feet a four and a half per cent grade leading to the level of an elevated station, the car turned upon a curve and entered a loop which it had to traverse before it reached the platform used for the discharge of passengers, and continued upon the curve on a ten per cent upward grade, there was evidence tending to show that the plaintiff knew of a sign on the door of the car reading, "All persons are warned not to enter or leave the car while it is in motion, or by the front platform," that he knew that in going upon the front platform while the car was in motion he took more risk than if he had remained in his seat, that he was in no particular hurry, but wanted to catch a connecting elevated train if it was there, that, ever since the incline and curve and loop had been in use by the defendant, in case of almost every car that went up the incline, half of the passengers went out upon the front platform and half upon the rear platform while the car was in motion, and that the plaintiff knew of that fact at the time of the accident; that he went upon the front platform and was about to take hold of the handle of the dasher of the car, when the motorman shut off his power and then suddenly turned it on fully, causing the car to jerk forward in an unusual manner and causing the plaintiff to lose his hold and, there being no gate to prevent him from doing so, to fall off the car.   *Held*, that the questions, whether the plaintiff was in the exercise of due care and whether the motorman was negligent, were for the jury.

A passenger on an electric street car who, while in the exercise of due care he was upon the front platform of the car as it approached a station and was preparing to alight, was thrown from the car by reason of negligence of the motorman in the management of the car, is not precluded from recovering from the company operating the car by reason of the existence of a rule of such company that "All persons entering or leaving this car while it is in motion or by the front platform do so at their own risk," if it appears that the rule was not properly posted in the car, and that the plaintiff did not know of its existence.   As to whether there could have been any recovery if the rule had been properly posted, the court expressed no opinion.

A rule of a street railway company, "All persons entering or leaving this car while it is in motion or by the front platform do so at their own risk," set forth in the last two lines of five-line signs on four panels below the front and rear windows of a closed elevated car, so that the two lines in question were about twenty-eight inches above the floor of the platform, is not properly posted.

A rule of a street railway company, " All persons are warned not to enter or leave this car while it is in motion, or by the front platform," is not a notice that persons entering or leaving the car while it is in motion or by the front platform do so at their own risk.

Evidence that for two or three years, ever since an incline leading to a curve and loop of the track and to a platform for the discharge of passengers at an elevated station of a street railway company had been in use by the company, half of the passengers in almost every car that ascended the incline had gone out upon the front platform of the car and half upon the rear platform while the car was in motion, tends to show that a rule of the company " All persons are warned not to enter or leave the car while it is in motion, or by the front platform," had been waived by the company at least as to such station.

At the trial of an action against a street railway company by a passenger upon a car to recover for injuries alleged to be due to the plaintiff's being thrown from the front platform of the car because, as the car on an incline entered a curve, which turned to the right from a straight track and then curved in a loop to the left, the motorman first shut off his power and then suddenly turned it on fully, causing the car to go forward with a sudden jerk, testimony of an expert offered by the plaintiff tending to show that, under the circumstances of the case, the plaintiff would have been thrown off the car, and not backward into the car, as the defendant contended he would have been according to a law of physics of which the defendant asked the court to take judicial notice, is competent.

TORT for personal injuries received by the plaintiff and alleged to have been caused by his being thrown because of negligence of the defendant from the front platform of a closed surface electric car, upon which he was a passenger, as it turned upon the curve of the southerly loop at Dudley Street Elevated Station in Boston after it had come up the incline from the street.   Writ dated July 29, 1903.

The case was tried before *Aiken*, C. J.   At the close of the evidence, he ordered a verdict for the defendant; and the plaintiff alleged exceptions.

The case was argued at the bar in January, 1909, before *Knowlton*, C. J., *Morton*, *Hammond*, *Loring*, & *Braley*, JJ., and afterwards was submitted on briefs to all the justices.

*H. I. Cummings*, for the plaintiff.

*W. G. Thompson*, (*S. H. E. Freund* with him,) for the defendant.

LORING, J.   On the morning of November 19, 1902, the plaintiff took a surface car of the defendant railway, which ran around the Dudley Street loop.   His intention was to take an elevated train from Dudley Street to Scollay Square.   He was a blacksmith by trade and the proprietor of a shop on Hawkins

Street, was thirty-nine years of age and familiar with the defendant's station at Dudley Street. He was on his way to his day's work and had a " bundle of lunch " in his hand.

To reach the level of the elevated trains the surface cars ascend at a four and a half per cent grade for two hundred feet, to a point which is practically the beginning of the curve of the loop. From that point, for the distance of about one hundred and fourteen feet, the grade is two per cent ; then for ninety-five feet the track is level, and then the down grade begins.

The plaintiff testified that the car on which he became a passenger started up the incline at the rate of about seven to eight miles an hour. He left his seat in the centre of the car and went out on to the front platform, carrying his " bundle ·of lunch " in his right hand. The gate on the left was shut ; that on the right was open. As he went through the door on to the front platform, the motorman shut off his power. That was before the car began to go around the curve. He " was about to take hold of " the handle of the rail of the dasher when the motorman threw on his full power and that " brought the car up suddenly with a jerk, something unusual, a very quick jerk," the plaintiff was thrown back by it, it caused him " to lose my hand hold," to quote his own words, " and the sway of the car, together with that, threw me off " on to a workman's platform on the right of the track. " As near as I can remember I struck on my feet, but no sooner did I strike than I was down and it seemed to give me some sort of a peculiar twist around and my legs, one of them, suddenly swung right over the rail, and the wheel cut it off between the foot and the knee, and cut the heel off the shoe on the other foot, and scarred my heel considerably, and scarred my legs more or less all over, and tore my clothing to pieces."

He further testified that after the motorman shut off the power the speed decreased about one half. That he knew that the motorman put on the full power when he put on the power after slowing down, because he " heard the handle or lever go round and strike a stop on the box there." He thought the place where he fell was eight or ten feet beyond the place where the workmen's or raised platform begins ; that he was lying there after the car passed. On cross-examination he testified that he had no hold of anything at any time. He further testified that he had seen

passengers riding on the front platform on other occasions; that in case of "most every car that goes up that incline" half the passengers go out on to the front platform and half on to the rear platform while the car is still in motion; that this was true before and "at the time of the accident." That this had been true for two or three years, ever since the road was opened. That he was the first man out on the front platform on the morning of the accident. That after the accident the car stopped within fifteen feet of where he lay. He further testified that he knew that in going on to the front platform as he did he took more risk than he would have taken had he remained in his seat in the car, especially on a curve. That he was in no particular hurry, but he wanted to be ready to get off when the car got to the station where passengers cross to the elevated train, because he wanted to catch the elevated train if there happened to be one ready to go. That when he went off the car he "went off clean and quick." He knew that it was usual for the motorman to shut off his power and for the cars to slow down when they came to the curve, and for the power to be put on afterwards and the speed to be increased.

1. We are of opinion that on this testimony it was a question for the jury whether the plaintiff was guilty of contributory negligence. *Fleck* v. *Union Railway Co.* 134 Mass. 480. See also in this connection *Beal* v. *Lowell & Dracut Street Railway,* 157 Mass. 444; *Wilde* v. *Lynn & Boston Railroad,* 163 Mass. 533; *Mason* v. *Boston & Northern Street Railway,* 190 Mass. 255.

2. A majority of the court is of opinion that the jury would have been warranted in finding that the motorman was guilty of negligence which was a cause of the accident. The plaintiff cannot complain that the car did not maintain a uniform rate of speed. That is true under ordinary circumstances, *McGann* v. *Boston Elevated Railway,* 199 Mass. 446, and was peculiarly true, and true to the knowledge of the plaintiff, in case of a car ascending the incline in question. If all that appeared in evidence in the case at bar had been that the car slowed down as the plaintiff came through the door on to the front platform and then started with a jerk which with the sway of the car threw him off the car, the case would have come within *McGann* v.

*Boston Elevated Railway,* 199 Mass. 446, *Stevens* v. *Boston Elevated Railway,* 199 Mass. 471, and *Hunt* v. *Boston Elevated Railway,* 201 Mass. 182. In such a case the evidence does not go far enough to warrant a finding that the motorman was negligent in the manner in which he started the car. Where the evidence goes further and shows that the motorman was negligent in the way he started the car there is a case for the jury. *McGann* v. *Boston Elevated Railway,* 199 Mass. 446, 448, 449. *Stevens* v. *Boston Elevated Railway,* 199 Mass. 471, 475. *Lacour* v. *Springfield Street Railway,* 200 Mass. 34. If the motorman, when starting ahead after slowing down, in fact threw on the whole power at once and with a rush in place of putting it on slowly, we cannot as matter of law rule that he was not negligent in the way he started the car ahead. The evidence warranted a finding that the motorman did start ahead in that way. The plaintiff testified that, after slowing down, the motorman " threw on his full power which brought the car up suddenly with a jerk, something unusual, a very quick jerk, which of course threw me back, caused me to lose my hand hold, and the sway of the car, together with that, threw me off "; that he " heard the handle or lever go round and strike a stop on the box there "; and that he " went off clean and quick." The same act of negligence was the negligence in *Beal* v. *Lowell & Dracut Street Railway,* 157 Mass. 444. The learned counsel for the defendant has urged that the time when the plaintiff testified that the full power was put on was at a time when the combined retarding effect of the up grade and of the curve was at the maximum, and so the danger of increasing the speed was at the minimum, and that this double retardation " is at once the justification for a more sudden putting on of the power and the protection against what on a straight rail would be its danger." That may be so and yet we do not know, and therefore cannot hold as matter of law, that the proper way, or a proper way, of putting on the power under those circumstances is to put it all on at once and with such a rush that when the lever comes up against the stop it can be heard.

3. We do not find it necessary to decide whether the plaintiff's counsel did or did not agree that there was a sign on the panel below each one of the four windows, two opening on the front

and two on the rear platform, stating that " All persons entering or leaving this car while it is in motion or by the front platform do so at their own risk." The plaintiff testified that he did not know of the terms of these notices nor of their existence.

The defendant has argued at great length that a passenger is bound by a rule of the carrier not known to the passenger, which provides that if the passengers ride in a certain place they do so at their own risk.

Doubtless a carrier can make reasonable rules for the conduct of its business, and its employees can justify any action necessary to enforce them.    *O'Neill* v. *Lynn & Boston Railroad,* 155 Mass. 371, 373, where the earlier cases are cited.

But a different question arises when the carrier, to cut down its liability to a passenger, invokes one of its rules that passengers riding in a specified place do so at their own risk.

It appeared in *Burns* v. *Boston Elevated Railway,* 183 Mass. 96, *McDonough* v. *Boston Elevated Railway,* 191 Mass. 509, *Pike* v. *Boston Elevated Railway,* 192 Mass. 426, and *Tompkins* v. *Boston Elevated Railway,* 201 Mass. 114, that the plaintiff in fact knew of that rule.

The defendant contends that it is enough that the rule was properly posted, and that in such a case a passenger is bound by it even if he did not in fact know of it.

However that may be, we are of opinion that the jury could not find that it was so posted. These signs were on four panels on the outside of the car, below the two windows opening on to the platforms. The rule here relied on is set forth in the two lower lines of the notice which in all consists of five lines. The top line of each sign was thirty-two or thirty-three inches above the floor of the platform, and these two lines were four and a half inches below the top of the sign. That is to say, the rule here in question was set forth in two lines twenty-seven to twenty-eight inches above the floor of the platform, or at a height between the knee and the waist of an ordinary man. It would not be seen by a passenger who went immediately into the car and took a seat. It would be seen only by passengers standing on the platform. For such passengers it would be partly hidden by the gate, when it was shut across it, and by passengers, if any, who stood in front of it.

4. The plaintiff admitted that he knew of the notice on the glass of the door. But the terms of that notice were: " All persons are warned not to enter or leave this car while it is in motion, or by the front platform." That is not a notice that persons entering or leaving the car while it is in motion or by the front platform do so at their own risk, as is strenuously urged by the learned counsel for the defendant company. A warning not to do an act is not a warning that one who does the act does it at his own risk. A warning not to do an act is at most notice of a rule forbidding the act. There was ample evidence that that had been waived. *McNee* v. *Coburn Trolley Track Co.* 170 Mass. 283. *Sweetland* v. *Lynn & Boston Railroad*, 177 Mass. 574. *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93.

5. It is not necessary to decide whether the presiding judge was wrong in excluding the evidence stated in the plaintiff's offer of proof. The plaintiff's counsel has stated at length what he intended to cover by that offer of proof. And as the case must go back for a new trial we shall consider what the plaintiff intended to prove. What he intended to set forth in his offer of proof was: " To show by an expert that the construction of the car permitted of a play of the body on the trucks, and that in passing over the curve the wheels would jam and grind against, first, the left hand rail, then the right hand rail, etc., alternately, and that this alternate motion, by reason of the play between the trucks and the car body, would be reproduced on a larger scale in the latter; so that, although the car was passing on a curve to the right, it would be perfectly possible for the plaintiff to be thrown or twisted off in that direction if this side play of the car body should happen to be in that direction when he got the effect of the sudden jerk ahead. That is, the result of the two forces might have thrown him off as he claimed he was thrown."

The defendant in the argument at the bar of this court contended that " the court should take judicial notice " of the " fact that any sudden acceleration of speed on a curve of this character tends to throw a body on the car in unstable equilibrium, not outward, but inward."

We are of opinion that the evidence which the plaintiff says he meant to offer would have been competent to negative the

law of physics of which the defendant asks the court to take judicial notice, and so to warrant a finding that the plaintiff was thrown off by the starting of the car.

*Exceptions sustained.*