CHARLES T. WORK *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Essex.    November 2, 1910. — January 6, 1911.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Street railway.

Statement by LORING, J., of the principles of law governing the liability of companies operating electric cars for injuries caused to passengers by jerks occurring when cars are stopped or started, jolts occurring as cars are run over switches or frogs, and lurches occurring as cars are run around curves, with a collection of the recent decisions of this court on the subject.

In an action by a passenger against a street railway company for personal injuries caused by the sudden starting of a car as the plaintiff was walking toward the door preparing to alight, there was evidence tending to show that, when there were but two persons on the car, the plaintiff had signalled the conductor to stop the car and the conductor had assented; that, after the car had stopped, the other passenger got off first and the plaintiff, having gathered his bundles together under his right arm, started for the door when, seeing the conductor reach for the bell rope to signal for the starting of the car, he seized a hanging strap with his left hand with a "pretty good hold" before the car started in order to guard against being thrown, but that the car was started with such a "jump," that the plaintiff lost his hold upon the strap, was "twisted" around and "landed right down in the corner" eight or ten feet away. *Held,* that,

while the conductor's negligence in starting the car under the circumstances before the plaintiff had alighted did not cause the injury to the plaintiff because the plaintiff had warning of it and an opportunity to steady himself against an ordinary starting of the car, and while there was no direct evidence as to what the motorman did in starting the car, there was, in the effect upon the plaintiff, indirect evidence that the car was started negligently; and that therefore the case was for the jury.

TORT for personal injuries received as the plaintiff was leaving a closed electric car of the defendant on Highland Avenue in Somerville, as stated in the opinion. Writ dated April 6, 1908.

In the Superior Court the case was tried before *Morton*, J., who, at the close of the plaintiff's evidence, ordered a verdict for the defendant; and the plaintiff alleged exceptions.

The facts are stated in the opinion.

*W. J. Corcoran*, (*M. F. Cunningham* with him,) for the plaintiff.

*E. P. Saltonstall*, for the defendant.

LORING, J. It is settled that jerks while running, jerks in stopping and starting to let off and take on passengers, jolts in going over frogs or switch points, and lurches in going around curves are among the usual incidents of travel in electric cars which every passenger on them must expect to encounter, and that if a passenger is injured by such a jerk, jolt or lurch the company is not liable. On the other hand an electric car can be started and stopped, for example with a jerk so much more abrupt and so much greater than is usual that the motorman can be found to be guilty of negligence and the company liable. The difference between the two cases is one of degree. The difference being one of degree and one of degree only, it is of necessity a difficult matter in practice to draw the line between these two sets of cases in which opposite results are reached. No general rule can be laid down. Each case must be dealt with as it arises.

But some points are settled. It is settled that it is not enough for a plaintiff in such a case to introduce the testimony of witnesses who characterize the jerk as an unusual one or as worse than unusual. *Foley* v. *Boston & Maine Railroad*, 193 Mass. 332. *Sanderson* v. *Boston Elevated Railway*, 194 Mass. 337. *McGann* v. *Boston Elevated Railway*, 199 Mass. 446. *Olund* v. *Worcester Consolidated Street Railway*, 206 Mass. 544. The plaintiff to

make out a case must go further than merely to characterize the jerk, jolt or lurch and must show (1) by direct evidence of what the motorman did that he was negligent in the way that he stopped or started the car (as in *Cutts* v. *Boston Elevated Railway*, 202 Mass. 450), or (2) by evidence of what took place as a physical fact, (as in *Lacour* v. *Springfield Street Railway*, 200 Mass. 34; *Black* v. *Boston Elevated Railway*, 206 Mass. 80;) or by evidence of what appeared to take place as a physical fact, (as in *Nolan* v. *Newton Street Railway*, 206 Mass. 384) show indirectly that the motorman was negligent. The earlier cases are collected in *McGann* v. *Boston Elevated Railway*, 199 Mass. 446. The cases which have been decided since then are *Stevens* v. *Boston Elevated Railway*, 199 Mass. 471; *Lacour* v. *Springfield Street Railway*, 200 Mass. 34; *Hunt* v. *Boston Elevated Railway*, 201 Mass. 182; *Cutts* v. *Boston Elevated Railway*, 202 Mass. 450; *Tupper* v. *Boston Elevated Railway*, 204 Mass. 151; *Black* v. *Boston Elevated Railway*, 206 Mass. 80; *Nolan* v. *Newton Street Railway*, 206 Mass. 384; *Olund* v. *Worcester Consolidated Street Railway*, 206 Mass. 544.

The plaintiff's story in the case at bar is that he told the conductor when he boarded the car in question that he wanted to get off at a real estate office, and that later on, seeing the sign of a real estate office, he " motioned " to the conductor to stop and the conductor nodded to him in answer. At that time he was seated at the forward end of the car on the right hand side. The car was a thirty-foot car with seats on each side running lengthwise of the car. He then turned and gathered up some tin signs which lay on the seat beside him. He took them in his right hand and proceeded to the rear door to alight. The car was then at a standstill. The conductor was on the platform and with his right hand was helping a woman get off the car; that he had his left hand on the bell rope apparently ready to ring the bell to start the car as soon as the woman had stepped off. The plaintiff was then eight or ten feet from the rear door. Seeing that the conductor was looking at the woman and not at him and anticipating that the car would be started before he got to the platform he " grabbed " a strap with his left hand, when " the car started instantly with a tremendous jump, it shot right forward and I lost my hold on the strap and

I twisted myself and I landed right down in a corner on the opposite side from where I was standing," eight or ten feet away. " I struck on the corner of the seat right up on the left side of my head." The plaintiff further testified that the car was not in motion when he took hold of the strap and (to quote his own words) " I took a pretty good hold on it because when I see him reach for the bell I thought the car would start."

There was evidence of negligence on the part of the conductor in that he rang for the car to go ahead without waiting for the plaintiff to get off after the plaintiff had " motioned " to him to stop and he had nodded in answer. But that negligence was not the cause of the. injury which the plaintiff suffered. The plaintiff saw that the car was about to be sent forward by the conductor; he had time while the car was standing still to take hold of a strap to steady himself as the car went forward, and he did so. If the car went forward with no more than the usual jerk he has no remedy. His right to recover depends upon the way in which the car was started.by the motorman.

There is no direct evidence as to what the motorman did in starting the car. But there is indirect evidence that the motorman was negligent in the way he started the car in the fact that although the plaintiff took hold of the strap to steady himself on the starting of the car while it was standing still, and got a " pretty good hold," he was thrown eight or ten feet and struck on the corner of the seat on the side of his head.

In *Stevens* v. *Boston Elevated Railway*, 199 Mass. 471, the plaintiff's hold on the handle of the car was broken, and in spite of that fact it was held that the evidence did not warrant a finding of negligence on the part of the motorman in starting the car. The trouble with the plaintiff's case there was that he had got down on to the step to get off, thinking that the stopping place was on the nearer in place of the farther side of Dartmouth Street, and that he thought that when the car slowed down before crossing the tracks on Dartmouth Street it was slowing down to stop for passengers to alight. The fact that under these circumstances the plaintiff had hold of the handle of the car did not justify the inference that the hold taken was a good enough one to guard against the usual jerk incident to a car starting forward; while in the case at bar the plaintiff's hold

on the strap was taken when the car was at rest because the plaintiff was afraid that the car was about to start forward. Under these circumstances the jury were justified in thinking that the hold taken was good enough to guard against the usual jerk incident to a car starting forward and in that it was corroborated by the plaintiff's testimony that his hold was a pretty good one.

There was no evidence that there was any other passenger on the car.

We are of opinion that this evidence warranted a finding that the motorman was negligent in the way he started the car and the entry must be

*Exceptions sustained.*