CATHERINE M. McCARTHY *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Middlesex.   December 8, 1910. — January 6, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence*, Street railway.

At the trial of an action by a woman against a street railway company to recover for injuries alleged to have been caused to the plaintiff by her having been thrown down by the stopping with an unwarranted jerk of a car of the defendant which she was about to leave, there was testimony by witnesses of the plaintiff tending to show that she signalled the conductor to stop the car and rose and stood in the aisle grasping with a firm hold handles on the ends of seats on each side of the aisle running at right angles to the aisle, that the car did not stop at the place intended, that the conductor thereupon gave another signal to the motorman, that the car then stopped so suddenly as to break the plaintiff's hold upon the handles and to throw her to the floor of the car. The conductor testified that, before reaching the stopping place where the plaintiff desired to leave the car, the motorman lessened the speed of the car to cross some switches, then applied the power and started forward and, upon receiving the conductor's second signal, applied air brakes too quickly. *Held*, that there was evidence warranting a finding that the motorman was negligent in the operation of the car.

TORT for injuries alleged to have been received, while the plaintiff was a passenger upon a closed electric car of the defendant, by an unwarrantably sudden stopping of the car as stated in the opinion. Writ dated February 18, 1908.

In the Superior Court the case was tried before *Morton*, J. The material facts are stated in the opinion.

At the close of the evidence the defendant asked the presid-

ing judge to rule that on all the evidence the plaintiff could not recover and that there was " no evidence of negligence on the part of the defendant with reference to the operation of the car." The judge refused so to rule. The jury found for the plaintiff; and the defendant alleged exceptions.

*H. D. McLellan,* for the defendant.

*R. H. Sherman,* for the plaintiff.

LORING, J.   The plaintiff in this case was a passenger in a long car with side seats at each end and cross seats with sliding backs in the centre. She testified that she was sitting on the last cross seat with one Callahan. As the car was nearing the crossing where she had asked the conductor to stop she got up, took hold of the handles in the upper corner of each of the two rear seats and stood in the aisle waiting for the car to stop, but the car did not stop. Then the conductor " gave another quick bell," saying in a disturbed tone, " What is the matter with that fellow ? "   Thereupon, to quote the plaintiff's words, " the car came to a terrible stop "; the stop " was an unusual stop; I never saw one like it . . . in its violence."   " I was thrown on the ground, on my back."   She testified that she " had quite a firm hold " of the two handles, and that she knew of the signs in the defendant's cars asking passengers to " Please be at the door when nearing your stop."   This story was corroborated by Callahan.   Callahan also testified that he stepped into the aisle to let the plaintiff, who was sitting next the window, pass out; that he took hold of the handle of the seat next in front of the seat on which he and the plaintiff had been sitting, and that he "was thrown backward like that against the side of the seat" by the abrupt stop, and the seat back, of which he had hold, slid forward.   The conductor was called as a witness by the defendant.   He testified that the plaintiff was standing in the vestibule when the car stopped and that she was thrown against the end of the car, that she "started to swing around" and that he " caught her arm and held her. I wasn't staggered at all, because I was used to the cars, and wasn't thrown at all." The conductor added that the motorman slowed down the car as it went over some switches and connections just before the plaintiff's stopping place, and then in place of bringing the car to a stop to let the plaintiff off he put on the power and started

ahead whereupon he "gave another bell" and the motorman put on too much air or put it on too fast and "brought up kind of abrupt."

We do not mean to intimate that the story of Callahan and the plaintiff taken alone would not have brought this case within *Lacour* v. *Springfield Street Railway,* 200 Mass. 34, *Black* v. *Boston Elevated Railway,* 206 Mass. 80, and *Work* v. *Boston Elevated Railway, ante,* 447, nor that the conductor's testimony taken alone would not have brought it within *Cutts* v. *Boston Elevated Railway,* 202 Mass. 450.   Upon those points it is not necessary to express an opinion for when the two are taken together there was without question evidence which warranted a finding that the motorman was negligent in the way he brought the car to a stop, and the case comes with the class of cases like *Work* v. *Boston Elevated Railway, ante,* 447.

*Exceptions overruled.*