## NATHAN ROSENTHAL vs. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

First Judicial District, Hartford, January Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Evidence that a train approaching a station was suddenly stopped with such force and violence as to pitch the passengers forward in their seats and to dislodge a suit-case from the luggage rack overhead, where it had been securely stowed away, is sufficient, in the absence of any explanation from the railroad company, to warrant the jury in inferring negligence in the operation of the train.

The furnishing of overhead racks for the purpose of stowing away luggage, is an invitation by a railroad company to its passengers to use them to the extent of their apparent limit of safety, and while they are so used the railroad company is bound to operate its trains so as not to endanger the lives or safety of passengers sitting in the seats beneath the racks, since they are not bound to maintain a look-out against falling luggage unless the danger is so obvious that it ought to attract the attention of any ordinarily observant person.

Unless it is apparently dangerous to put two suit-cases in the rack, one on top of another, the railroad company should give notice to the passenger of any such risk arising therefrom, otherwise it may be held negligent for its failure in this respect.

Argued January 13th—decided March 5th, 1914.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Superior Court in Hartford County

where the plaintiff was nonsuited in a trial to the jury before *Tuttle, J.*, and from the refusal of the trial court to set aside this judgment the plaintiff appealed. *Error and new trial ordered.*

*Hugh M. Alcorn* and *William M. Maltbie*, for the appellant (plaintiff).

*Joseph F. Berry*, for the appellee (defendant).

BEACH, J. The plaintiff, with two friends, was playing cards in the smoking-car of a train running from New York to Hartford, when it was suddenly stopped a short distance before reaching the New Haven station, and at the same moment a suit-case fell from the rack over the seat in which the plaintiff was then sitting and struck him on the head, inflicting an injury which then appeared to be slight, but from which serious consequences afterward developed. The plaintiff's friends had placed two suit-cases in the rack, one over the other, before the train started from New York.

The plaintiff makes a twofold claim: first, that the suit-case was thrown from the rack by a train-stop so unusually sudden and violent that, unless it was satisfactorily explained by the defendant, the jury might reasonably infer therefrom negligence in the operation of the train; and second, that if the stopping of the train was not unusual, and the fall of the suit-case was occasioned in whole or in part by the ordinary motion of the train, the defendant ought to have foreseen the danger and protected the plaintiff against it.

The witness who placed the top suit-case in the rack testified that it fitted in snugly, and that, as he intended to sit under it, he saw it was safe. There is no evidence that it afterward worked loose or shifted its position prior to the fall. The evidence as to the character of

the stop comes from the plaintiff and his witnesses, who describe it as "an awful jar," "like leaping over," "threw me forward," "a strong jolt," "we lunged forward," "gave us a very big jar, I never saw anything like it." Simultaneously the suit-case struck the plaintiff on the side of the head and landed in the middle aisle of the car.

The principal question is whether, from this testimony, the jury might reasonably have inferred negligence in the operation of the train. The conditions under which negligence may be inferred from sudden movements of trains and electric cars have been recently discussed in *Work* v. *Boston Elevated Ry. Co.*, 207 Mass. 447, 93 N. E. 693, in which it is pointed out that the difference between such jars and jolts as are the usual incidents of the operation of electric and steam trains, and those which are so much more abrupt than usual as to give rise to an inference of negligence, is a difference of degree; and that therefore it is a difficult matter in practice to draw the line between two sets of cases in which opposite results are reached. The court then states the Massachusetts rule as follows (omitting citations): "But some points are settled. It is settled that it is not enough for a plaintiff in such cases to introduce the testimony of witnesses who characterize the jerk as an unusual one or as worse than unusual. . . . The plaintiff to make out a case must go further than merely to characterize the jerk, jolt or lurch, and must show (1) by direct evidence of what the motorman did that he was negligent in the way that he stopped or started the car, or . . . (2) by evidence of what took place as a physical fact, . . . or by evidence of what appeared to take place as a physical fact, . . . show indirectly that the motorman was negligent." In this case the witnesses not only characterized the stop as sudden and violent, but they testified to the physical effect on them-

selves, as throwing them forward in their seats, and
to the simultaneous fall of the suit-case, which, accord-
ing to the testimony, had been securely stowed in the
rack before the train started.   We think that the jury
might reasonably have found that the stop was un-
usually sudden and caused the suit-case to fall from a
position from which it would not probably have been
dislodged by the ordinary motion of the train.   The
starting and stopping of trains is a matter peculiarly
within the control of the employees of the railroad, and
the safety of passengers may be endangered by careless
or unskillful handling of the powerful apparatus em-
ployed for these purposes.   A passenger cannot be ex-
pected to know the cause of an abrupt stop resulting
in injury, and it is not asking too much of the defendant
railroad that it should be put upon its explanation by
evidence showing that the stop was uncommonly abrupt
and that it produced a physical consequence in itself
unusual, from which the plaintiff's injury resulted.
*Zeigler* v. *Danbury & Norwalk R. Co.*, 52 Conn. 543;
*Thorson* v. *Groton & Stonington Street Ry. Co.*, 85 Conn.
11, 81 Atl. 1024.

It is said that the doctrine of *res ipsa loquitur* has no
application to this case because the suit-case which
caused the injury was not under the control of the de-
fendant.   But we are not inclined to follow the sugges-
tion, contained in some of the New York cases, that the
railroad company is bound to exercise only a reasonable
degree of care in protecting its passengers from the risk
of luggage falling from racks provided for its stowage.
The furnishing of racks for that purpose invites pas-
sengers to use them to the extent of their apparent
limit of safety, and imposes on the railroad, when the
racks are so used, the duty of operating its trains so as
not to endanger passengers sitting in the seats under-
neath such racks.   If the defendant maintained racks of

such construction that there was a risk, not apparent to the ordinary passenger, in putting one suit-case on top of another, it should have given notice that it was dangerous to do so, either before the train started, or at some time during the hour and a half after the train started and before the accident happened. If any evidence had been offered from which the jury could reasonably have found that the rack in question could not safely hold two suit-cases one on top of the other, we think the jury would also have been justified in finding that the defendant was negligent in giving no warning of that fact; for it is clear that a passenger sitting in a seat provided for that purpose is not bound to maintain a look-out to protect himself against the danger of falling luggage, unless perhaps when the danger is so obvious that it ought to attract the attention of any ordinarily observant person. But the evidence as offered pointed the other way and indicated that the suit-case in question was securely stowed in the rack before the train started; and there was no evidence that it was in fact dislodged, or was liable to be dislodged, by the ordinary motion of the train. Under this condition of the testimony the jury might reasonably have found that the proximate cause of the accident was the unusually abrupt train-stop; and this, as already stated, is a cause peculiarly under the control of the defendant's servants.

There is error and a new trial is ordered.

In this opinion the other judges concurred.