SADIE BELLEDEAU *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, Bridgeport, October Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued October 23d, 1929—decided March 3d, 1930.

*Harry M. French,* for the appellant (plaintiff).

*William B. Gumbart* and *Charles A. Watrous,* for the appellee (defendant).

WHEELER, C. J.   The essential facts which the jury might have found upon plaintiff's evidence upon the issue of the liability of the defendant are few.   The plaintiff boarded one of defendant's large one-man trolley cars at Center and Church Streets, New Haven; another. woman got on the car just behind her and the plaintiff moved over so that she might get in the vestibule of the car.   On moving over the plaintiff was directly behind the motorman, she leaned forward and placed her transfer on the fare box for the motorman; she had not had an opportunity to turn around and enter the body of the car when it started with what she designated a "terrific jar" which caused her to fall, striking her spine upon the slats on the floor of the vestibule, or upon the slats in the corner of the vestibule.   As she fell she tried to break the fall by clutching tightly this woman passenger's arm.   There was nothing available in the vestibule of the car which she

could grip and support herself by. The iron upright between what we designate as the vestibule and the body of the car was half way across the car and about directly behind her. The ordinary operation of the car, as the defendant's motorman testified, was to start a car "easy." "Same as usual." "All cars start—is supposed to start easy." Nothing appears in the evidence to explain the sudden starting of the car; the defendant's evidence tended to show that the car was not started with a jar or jump, but easily which was the usual and we must assume from this testimony the proper manner in which to operate the car. There were few passengers on the car. So far as the evidence discloses there was nothing within the car to distract the motorman's attention from the operation of the car, and no traffic conditions to turn his attention particularly to the street and no emergency requiring him to start the car suddenly. Nothing appeared in the evidence which tended to indicate that the plaintiff's failure to fulfil her duty to exercise reasonable care materially contributed to her injuries. For example, if she had turned around, just before the car started, for the purpose of entering the body of the car, it would have been her duty to exercise reasonable care in supporting herself against any ordinary jar or lurch of the car by gripping this iron support, or if she had stepped into the body of the car before the car started, by taking hold of the car straps or the backs of the seats, if there were such. She must do this, since she is charged with the knowledge that the operation of trolley cars not infrequently occasions ordinary jars and lurches to them.

On the other hand, while the plaintiff must exercise reasonable care, the defendant as a carrier of passengers for hire "is bound to use the utmost care which is consistent with the nature of the business, to guard the

passenger against all dangers from whatever source arising, which may reasonably and naturally be expected to occur, in view of all the circumstances and of the number and character of the persons with whom the passenger will be brought in contact. The carrier must provide safe, sufficient and suitable vehicles for transportation, and must provide such servants for the management of the same, and make all such reasonable arrangements therefor, as the highest care of a prudent man would suggest as necessary to a safe passage." *Murray* v. *Lehigh Valley R. Co.*, 66 Conn. 512, 518, 34 Atl. 506.

Fulfillment of that duty will be required, holding in view the nature of the business—a public one—its obligation in meeting the public demand, to transport its passengers with such speed as is consistent with the safety of its passengers and those who may be in the public streets the railway traverses; that at each stop there is no obligation on its part to refrain from starting the car until the passenger boarding the car has taken his seat and that in starting and stopping its car it does so with the right to expect that passengers boarding or leaving the car will exercise reasonable care to protect themselves against liability of injury from a sudden stopping or starting of the car due to some unusual occurrence, or even from the ordinary jar or lurching of the car. It provides, customarily, in the body of the car, strap supports for this purpose. In the quality of proof required of a plaintiff we, as well as the courts of a number of other jurisdictions, hold that mere proof of the negligence of a railway by the characterization of the manner of stopping or starting a car by strong adjectives or expletives will not suffice as descriptions of an act of negligence.

This rule of proof, we take it, has been adopted as a matter of public policy, to avoid having liability based

upon a mere expression of feeling on the part of the injured which experience has shown to be oftentimes the exaggeration of self-interest in anticipation of a judgment against a responsible defendant. We require that the description or characterization of the negligent cause of harm, shall be accompanied by other proof. We had occasion, for the first time, in *Rosenthal* v. *New York, N. H. & H. R. Co.,* 88 Conn. 65, 89 Atl. 888, to consider and determine what should be the character of proof we should require. We there adopted the rule which had been recently announced in *Work* v. *Boston Elevated Ry. Co.,* 207 Mass. 447, 93 N. E. 693. In that case the jury might have found that the plaintiff, while preparing to alight from an elevated railway car, had a firm hold upon a strap, but by a tremendous jump of the car his hold on the strap was broken and he was thrown some eight or ten feet in the car, causing him serious injury. We quote from this case, characterizing it as the Massachusetts rule, as follows: "But some points are settled. It is settled that it is not enough for a plaintiff in such cases to introduce the testimony of witnesses who characterize the jerk as an unusual one or as worse than unusual. . . . The plaintiff to make out a case must go further than merely to characterize the jerk, jolt or lurch, and must show (1) by direct evidence of what the motorman did that he was negligent in the way that he stopped or started the car, or . . . (2) by evidence of what took place as a physical fact, . . . or by evidence of what appeared to take place as a physical fact, . . . show indirectly that the motorman was negligent." Applying this rule to the facts we said: "In this case the witnesses not only characterized the stop as sudden and violent, but they testified to the physical effect on themselves, as throwing them forward in their seats, and to the simultaneous fall of the suit-case, which,

according to the testimony, had been securely stowed in the rack before the train started. We think that the jury might reasonably have found that the stop was unusually sudden and caused the suit-case to fall from a position from which it would not probably have been dislodged by the ordinary motion of the train." It is important to notice that we include the physical effect on the plaintiff and his friends as among the physical facts which took place which tended to furnish the basis for holding defendant negligent. Our adoption of this rule did not carry with it, as counsel for the defendant assume, the subsequent interpretation of this rule by the Supreme Judicial Court of Massachusetts, nor limitations as to the proof required which that court might thereafter impose. The Massachusetts court, as we understand, is not limited, as is our own court, to the decision of errors of law, nor prevented from finding facts as such, as we are. Subsequent decisions of the Massachusetts court appear to have limited the right of recovery in cases involving injury to a passenger in a railroad or railway car from the stopping or starting of the car to two classes. If the passenger boarding a railway car and standing in the car or on the vestibule platform, in each instance supporting himself by gripping well the grip provided by the railway, or some part of the car, is by the starting or stopping of the car in so violent a manner as to cause him to loosen his grip and to be thrown some distance in the car, this is esteemed to be sufficient evidence of negligence to entitle the passenger to recover for resulting injury. *Work* v. *Boston Elevated Ry. Co.,* 207 Mass. 447, 93 N. E. 693; *McCarthy* v. *Boston Elevated Ry. Co.,* 207 Mass. 551, 93 N. E. 694; *Young* v. *Boston & Northern Street Ry. Co.,* 213 Mass. 267, 100 N. E. 541; *Warren* v. *Boston Elevated Ry. Co.,* 259 Mass. 226, 155 N. E. 871; *Weiner* v. *Boston Elevated Ry.*

*Co.*, 262 Mass. 539, 160 N. E. 259; *Pickard* v. *Boston Elevated Ry. Co.* (Mass.) 166 N. E. 561. So, too, in that jurisdiction, if a passenger is standing in the aisle of a car and it is started with such violence that the passenger is thrown a distance of six feet and, as a consequence, suffers serious injuries, these will be regarded as evidences of physical facts warranting a finding that the car was started in an unusual and negligent manner. *Convery* v. *Eastern Mass. Street Ry. Co.*, 252 Mass. 418, 147 N. E. 824. All of these cases fall within the rule in *Work* v. *Boston Elevated Ry. Co., supra,* as we interpreted it in the *Rosenthal* case. The defendant relies upon other Massachusetts cases, to which the limits of this opinion prevent extended reference.

These cases do hold, however, that a passenger boarding or alighting from a car takes the risk of all ordinary lurching or jarring of the car caused by the starting or stopping of the car, and if, in consequence, he falls to the floor, no act of negligence on the part of the operator of the car will arise from the fall to the floor, but if there is proof other than by descriptive characterization of some act of negligence showing that the operation was such as to cause an unusual jerk or lurch as when it loosens his firm grip and throws him a number of feet, or if it throws him a number of feet, while he is in the body of the car and unsupported, causing serious injury, the case is one for the decision of the jury.

These holdings of the Massachusetts court constitute an interpretation of the meaning of a "physical fact" in the rule of *Work* v. *Boston Elevated Ry. Co.*, excluding as factors the fall to the floor and the nature and extent of the injury suffered. In this particular they differ with the interpretation placed by us upon these words in the *Rosenthal* case. We take all of the circumstances which are present in passing upon the issue

of negligence; two of these are the fall and the nature and extent of the injury. The injury suffered may, or it may not, be an important factor in the decision of whether the operation of the car was unusual or not. These decisions seem to limit the issue to the distance the jerk or lurch of the car throws the passenger. That the measure of the force of the jerk or jolt is determined by whether the passenger is propelled forward, or directly downward as to the floor, or directly sideways, seems to us an undemonstrable proposition, but if so, practical experience would be apt to shatter the view that the force which caused the passenger to fall to the floor must necessarily or usually be of less intensity than that which caused him to be propelled forward several feet; in any event, that cannot be so determined as a matter of law unless the circumstances be such that the reasoning mind could not reasonably reach another conclusion. The truth is, the decision is one of degree, to be ascertained upon a weighing of all the facts; as a rule such a question is one of fact for the trier. Whether the motorman was negligent toward a passenger in the operation of his car depends upon whether he acted with the care required by law of a man circumstanced as he was. Where this is the standard to be applied, it is to be settled by the application of this standard to the facts in evidence. If the standard is fixed by law, or by the general agreement of men's judgment, the conduct involved is manifestly contrary to that of the reasonably prudent man and the court may determine and apply it as matter of law; but where, as occurs in most cases, controversy exists as to what would be the conduct of the ordinarily prudent man similarly circumstanced, the fixing of the standard cannot be determined as one of law but must be left to the trier. *Farrell* v. *Waterbury Horse R. Co.,* 60 Conn. 239, 250, 21 Atl. 675, 22 id. 544; Common

Law, Holmes, p. 123. This rule of law is the only one which has met the test of experience. We should not circumvent the rule by extending our rules of proof requirements beyond the demands of true public policy. Aside from this rule of our law, another restriction is imposed by our Constitution. Our court is constituted for the correction of errors of law; its jurisdiction is confined to the determination and application of principles of law, it cannot determine pure questions of fact. *Styles* v. *Tyler,* 64 Conn. 432, 30 Atl. 165.

Let us now apply these rules of law to the facts of this case. The jury may have found: The motorman knew the plaintiff had not had the opportunity to turn around to go to her seat and that there was no support she could avail herself of until she had turned around. The proper way to start a car is to start it "easy." It was a permissible inference, that since the plaintiff was in the exercise of due care, if the car had been started "easy" it would not have caused her to fall, but that the starting of it in an unusual way was the cause of her fall. It was a reasonable inference that it was the duty of the motorman to have, under these circumstances, given her the opportunity to get in the body of the car on the way to her seat where she could have protected herself by holding fast to some part of the car or its equipment. Instead of giving her this opportunity the car started with a "terrible jar" causing her to fall upon her spine upon the slats on the floor or those on the floor along the corner of the car. From her position, leaning slightly over toward the cash box, before she could turn around she was thrown backward and upon the floor. The distance where she struck the floor from the position in which she stood does not appear, whether it was one foot or three feet is not the necessarily determinative factor of the intensity of the jar from the starting of the car. It would be a

reasonable inference that the propulsion of a passenger standing in the aisle of a car by its sudden starting would be apt to exceed in mere distance the throwing of the passenger backward or sideways who was standing in the vestibule. The fall caused a slight separation of the end of the spine from the pelvis, that is a separation of the left sacroiliac joint, which is the weight-holding part of the structure when the body is erect. The plaintiff was extremely tender in all of this region and suffered much pain. Her nervous system was affected and there was an exaggeration of a condition of a pre-existing prolapse. The injury to the end of the spine set up an inflammation of the lining and she had a rather well defined case of traumatic neurosis. The prognosis is that she will require treatment for a year to about a year and a half from the time of the accident. The probable result of the sacroiliac joint separation may leave her with a weakness over this joint for some period of time and it may continue for life.

The severity with which the injured passenger fell will be some indication of the manner of operation of the car which caused the fall. The throwing of a passenger, as this plaintiff was standing, backward to the floor furnishes some support for the inference that the operation of the car must have been unusual to produce this unusual result. We cannot hold as matter of law that the throwing of the plaintiff upon the floor of the vestibule of the car was not an act of negligence in the operation of this car. Aside from this, the jury might reasonably have found that the motorman was negligent in starting the car when he knew of the presence of the plaintiff in a position where she could not protect herself against even an ordinary jerk or lurch of the car by gripping some part of the car or its equipment.

The defendant's bill of exceptions includes two

points: (1) that the court charged contrary to the fact that the plaintiff testified that the car started with an unusual and violent jerk, and (2) that the court also charged that the jury might take into consideration the physical fact, whether the plaintiff was thrown to the floor. The first of the exceptions is not well taken, the plaintiff did testify directly upon this point. The second of the exceptions has been sufficiently covered in the opinion and adversely to the defendant's contention.

There is error, the judgment is set aside and the Superior Court directed to enter judgment upon the verdict.

In this opinion the other judges concurred.