**In re MICHEL.**

**Ex parte SOLIMINE.**

**No. 250.**

Circuit Court of Appeals, Second Circuit.

Feb. 15, 1932.

Leo J. Linder, of New York City, for objecting creditor-appellant Nicholas Solimine.

Abraham Wilson, of New York City, for bankrupt-appellee Louis Michel.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal comes up from an order of the District Court confirming the report of a referee in bankruptcy and granting a discharge to the bankrupt, Louis Michel. The referee found that equities belonging to Michel, which had been substantial during times of business expansion, were wiped out in the succeeding depression. While the referee found generally that the testimony of Michel was truthful, he did not analyze or attempt to reconcile in any satisfactory way flagrant inconsistencies and essentially incredible evidence offered on behalf of the bankrupt. The District Judge filed a memorandum in which he relied on the fact that the referee had heard the bankrupt testify, and said that "the orderly administration of justice requires that a reviewing court should leave a report that involves a question of credibility, only, undisturbed." But it is plainly not enough that a question of credibility is involved. If the statements of a bankrupt who seeks a discharge are so plainly contradicted by surrounding circumstances that they cannot rationally be said to represent the truth, his story cannot be credited. The District Judge has the ultimate responsibility of determining the facts, and the say-so of a master cannot dispense with it. The ultimate responsibility is quite aside from the duty of a judge who is reviewing the report of a master to give great weight to findings of fact by one who has seen and heard the witnesses. An examination of the record in the present

case leads us to the inevitable conclusion that the bankrupt should not have been granted a discharge.

The objecting creditor contends that the bankrupt should have been denied a discharge because:

(1) He made a false oath in relation to his bankruptcy proceeding.

(2) He concealed from his trustee, while a bankrupt, property belonging to his estate in bankruptcy.

(3) He concealed books of account and records with intent to conceal his financial condition.

The first false oath of the bankrupt was that he had no interest in the business of L. Michel Plumbing & Heating Corporation, that he received no money from it at any time, but that it all belonged to his brother-in-law Nosnick.

He admitted that he was president of L. Michel Plumbing & Heating Corporation; that he signed all the checks for it; that he employed the necessary labor; that he drove a Packard car belonging to the company; that it did business under his own plumbing license; that he negotiated plumbing contracts and made collections for it; and that he signed a statement filed with the New York City building department to the effect that he owned 51 per cent. of the stock. He said that Nosnick had a certificate for 24 shares and he himself held a certificate for 26 shares of the stock in his own name. While he claimed that the equitable interest in all the stock really belonged to Nosnick, he never produced the latter as a witness to support a contention which was so vitally contradicted by the mode in which the business was conducted.

The second false oath was as to the E. G. J. Realty Corporation. He did not mention this corporation in his schedules, and swore at the hearing that he had no interest in it after January 1, 1929. Yet he admitted that he had owned 50 per cent. of its stock, and said that his cousin Somberg owned the balance. Somberg said he transferred his interest to one Fliegler and never received any moneys from the company. Michel said that the company acquired a piece of property on Walton avenue, which it sold for $50,000, that he "must have got about half of it," but had used this up in his business. But ten months before bankruptcy the corporation had $30,000 on deposit, two months before it had over $12,000, and three weeks before $5,600. He said he could not tell to whom a check for $10,000 went in February, 1929, or a check for $5,800 in August, 1929, or a check for $5,600 in October, 1929. Michel admitted that he could draw checks on the account of the E. G. J. Corporation; yet he failed to account for the disposition of its property and disclaimed knowledge as to such disposition. He did not mention Fliegler as a co-owner of the E. G. J. Realty Company, but gave the name of Somberg as the other interest. Fliegler claimed that he was a co-owner and that he had put $30,000 received from the E. G. J. Realty Corporation into an enterprise of the bankrupt's called the Rosan Building Company, by taking a mortgage on its property. Shansky, an associate of the bankrupt in the Rosan Building Company, testified that he knew nothing about Fliegler in this matter, that "all of the transaction was done with Mr. Michel" (fol. 725). Such vague shifty testimony leads to the presumption that Michel had an interest in a substantial amount of assets which he never put in his schedules or was willing to disclose. He could easily have furnished evidence to explain all these matters and should have done so if he was to obtain a discharge.

In view of the proof of a false oath, it is unnecessary to discuss the doubtful objection based on concealment of books of account. We think enough has been shown to sustain the objections to a discharge on the first two grounds above mentioned.

The order is reversed, and the proceeding is remanded, with direction that an order be made denying the petition of the bankrupt for a discharge.