In re CONNECTICUT CO.

Claim of MULCAHY.

No. 42.

Circuit Court of Appeals, Second Circuit.
Nov. 6, 1939.

CHASE, Circuit Judge, dissenting.

John H. Weir, of New Haven, Conn. (Frank W. Daley, of New Haven, Conn., on the brief), for appellant.

Edwin H. Hall, of New Haven, Conn., for debtor-appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal by Nora Mulcahy from the action of the District Court in disallowing her claim against The Connecticut Company in the proceedings for its reorganization pending below. The claim is one for damages for personal injuries sustained by the claimant while a passenger upon a trolley car of the debtor. Previously the court had referred the claim to a Special Master for hearing and report, and the Master found liability and recommended the allowance of the claim, in the amount of $3,000. In disallowing the claim the court sustained exceptions to the Master's report and found no negligence upon the part of the debtor. We are called upon to review this result in the light of the well settled principle that the findings of fact of a master must be accepted "unless clearly erroneous." General Order 47 in Bankruptcy, 11 U.S.C.A. following section 53; Federal Rule of Civil Procedure 53(e) (2), 28 U.S.C.A. following section 723c; In re Slocum, 2 Cir., 22 F.2d 282.

The accident in question occurred on the evening of January 25, 1935, while the claimant was a passenger upon one of the debtor's trolley cars on Chapel Street in the center of the City of New Haven. Claimant was accompanied by her sister. After the car had crossed State Street, proceeding westerly, she pressed the button at her seat to sound the buzzer as a signal that she desired to get off at Orange Street, the next cross street. Then she and her sister got up from their seat and walked forward toward the front of the car. They say that the trolley began to slow down, a point somewhat in dispute; at any rate, while they were going forward, the car came to a sudden and abrupt stop, throwing them to the floor and causing the plaintiff the injuries for which she claims damages. The court concluded with the Master that, unless justification was shown, an inference of negligence on the part of the motorman would arise. The difference between the Master and the court is as to the motorman's explanation, which was found insufficient by the Master, but was accepted by the court.

The motorman's justification for the abrupt stop is that he was forced to make it in order to avoid striking an automobile suddenly appearing in front of him. A third person waiting at Orange Street for the trolley testified that he observed an automobile pull out in front of the trolley, and the Master did not question this fact. The court looked upon the testimony of this observer as important evidence in support of the motorman's story, because the witness thought the automobile "looked pretty close" to the car, although he could not fix the distance in feet. But it is doubtful if this helps much on the vital issue of the relative position of the two vehicles. Both were coming towards him in the same path half a block away. Under the circumstances he wisely declined to be precise as to the distance between them. The justification, if any, must be found in the motorman's own story checked in the light of all the relevant circumstances.

The court found the Master's report wanting for lack of a finding of the ultimate fact of negligence on the part of the debtor's motorman. If the Master's views were in doubt, his conclusion that liability existed would suggest the propriety of a return of the report to him for clarification, rather than its rejection. Such a course is expressly authorized by the federal rules, cited above. But we think the Master made his conception of the case abundantly clear. His report finding liability is supplemented by a memorandum of decision and a separate summary of the evidence. In both of these documents it is stated that the motorman's testimony must be discredited, and that he did not use reasonable care in making the abrupt stop. And these conclusions are supported by reference to specific facts. A master's report is certainly not to be viewed as were pleadings in the old days with all presumptions against the author. Read reasonably, the Master's various statements do find negligence on the part of the motorman justifying the recommendation made in the case. The court, however, went further and concluded that the subordinate facts found did not lead necessarily to the conclusion reached, and that the Master misapprehended the proper test of negligence to be applied under the circumstances. That, rather than any excep-

tions to the form of the report, is, as we view it, the substantial basis of the decision below before us for review. To that we may therefore direct our attention.

■ A transcript of the evidence before the Master deemed important for this appeal appears in the record. It contains the motorman's testimony to the effect that, having stopped to let off a passenger at State Street, he resumed speed and was traveling westerly about 16 miles an hour when opposite Shartenberg's department store on the north side of the street, in the middle of the block between State and Orange Streets, just as an automobile pulled out from the curb on his right and about 20 feet in front of him. To avoid striking the automobile he had to make an emergency stop, but even so "came about 3 feet of hitting him." He was traveling 16 miles an hour, at which rate he could make an ordinary stop in a car length, or 38 feet. With the emergency stop "there isn't any slow down or anything else," "you don't make any slow down. You only put it in, one stop," and "I didn't jolt once before I came to a dead stop." The automobile was traveling 10 miles an hour and did not stop; the motorman could not get the license number because of "these women" who "were thrown right into the front vestibule of the car."

The Master discredited this testimony, to the extent of saying: "We have it therefore established with a practical certainty that the motorman was not going at anything like 16 miles an hour when he brought the car to an emergency stop 20 feet away from the car which pulled away from the curb." In reaching this conclusion the Master relied in part upon "the unquestionably veracious narrative of the plaintiff" showing that the car was appreciably slowing down to a stop at Orange Street. The Master also believed plaintiff's testimony that she had given the buzzer signal for the stop (even though the motorman claimed not to have heard it), and observed that on either alternative—that the motorman did hear the signal, or that he was inattentive—the debtor "cannot maintain its claim that the motorman acted with due care."

The District Court's conclusion favorable to the motorman rests on the basis that even with the emergency stop the trolley came within three feet of the automobile, and hence the motorman acted justifiably in view of the emergency. We think, however, that this bit of testimony affords convincing support for the Master's action in discrediting the motorman's testimony. Events could not have transpired as the motorman says they did. The abrupt stop is, of course, admitted. The distance between automobile and trolley when the motorman first saw the automobile can be taken as established as at least 20 feet. This not only is the reasonable conclusion from his evidence, where he uses the figure three times (even though in two of them he does say "15 to 20"), but is supported by the references made to physical objects. For the entrance to Shartenberg's department store was 20 feet in width, and the motorman repeatedly places himself east of it when the automobile pulled out from beyond the "No Parking" sign west of it. Indeed, the distance was undoubtedly more than 20 feet. Such distances are often underestimated by inexpert witnesses; and here some allowance should be made for the fact that on his statement he was *east*, and the automobile *west*, of the entrance, thereby indicating an interval somewhat greater than the mere width of the doorway.

If the intervening distance at the beginning of the incident was 20 feet or more, it could not have been substantially less at its end. That is the effect of the motorman's own testimony fixing the place of the stop: "I was on the east side Shartenberg's main entrance when I let go the handle to make an emergency stop. He was on the west side." His testimony as to the suddenness of the stop has already been quoted. Analysis of the claimed respective speeds of the two vehicles leads to the same conclusion. Both car and trolley were going forward in the same direction, the trolley at a rate of speed 1-⅗ths times that of the automobile, as he says. If both maintained an even speed, the trolley would have had to proceed almost a car length before catching the automobile; if the automobile had continued as before and the trolley had made a normal stop, the former would have been outdistancing the latter before the latter's speed was half checked and the gap much reduced; while if the automobile was accelerating while the trolley was being abruptly stopped there is little wonder that the driver of the automobile went blissfully on without realizing the disturbance he had left behind him.

The motorman's testimony as to the three-foot interval must therefore be re-

jected as impossible under the circumstances. The Master's finding, quoted above, which includes the statement that the motorman brought the trolley car "to an emergency stop 20 feet away from the car which pulled away from the curb," is supported by the evidence. Therefore, even on the respective speeds claimed by the motorman, no emergency stop was necessary. These estimates may well be over-precise, because hasty observation under circumstances such as here disclosed cannot be expected to have absolute precision. But attempted correction of these estimates will not help the motorman, for the testimony supports the Master's view that the trolley was going at a slower rate than the motorman claimed, thus indicating even less reason for the emergency stop. Possibly, as the court suggests, the automobile was traveling at a slower rate than the motorman's estimate; but if so, that is counterbalanced upon a finding of a slower rate for the trolley. Only by greatly changing the relative speeds, in ways not supported by the evidence—pushing the speed of the trolley up substantially and that of the automobile down and assuming a slow stop of the trolley—can we approach a situation where the motorman's story begins to make sense.

█ The Master stated that it was impossible to say "to what exact speed in miles per hour the speed of the [trolley] car was in fact reduced." Elsewhere, however, he did say that the car could have been stopped in half its length by an ordinary braking operation. From this statement and the motorman's testimony that it could be so stopped in a car length when going at 16 miles an hour, the court attributes to the Master a conclusion that the speed at the time was 8 miles an hour and draws certain conclusions therefrom with respect to the limited time given the motorman to make a decision. This makes the Master's findings more precise than he intended or the evidence justified, and the deduction is not an entirely accurate one at best; but the point is not important upon our conclusion that the distance separating the two vehicles was necessarily greater than that which the court had in mind. Undoubtedly the motorman had to act with promptitude. But that was his job. Certainly a motorman must watch for the turning out of traffic into the center of the street, for that is one of the most normal vicissitudes of modern travel in crowded city streets. Indeed, the real explanation of this accident may be his inattention to ordinary risks of his work. He said he did not hear the buzzer; the plaintiff testified that he actually did not stop until he got beyond the department store and opposite a millinery shop to the west. That indicates a delayed response to a not unusual demand. We must remember that, as all admit, the claimant had satisfied her initial burden and had shown a case justifying an inference of negligence and calling for explanation by the motorman. Under the circumstances we do not feel we can say that the Master was in error in remaining unconvinced of the imminence of emergency, and hence of the adequacy of the attempted explanation.

The case is not like Robinson v. Connecticut Co., 122 Conn. 300, 189 A. 453, where the motorman had to act to avoid striking a bus which had stopped suddenly. There a real barrier to forward progress existed; here the claimed barrier was taking itself away with celerity and complete dispatch. More in point are Belledeau v. Connecticut Co., 110 Conn. 625, 149 A. 127, and the recent Superior Court case of Sullivan v. Connecticut Co., 1939, 7 Conn. Supp. 35, wherein both the Belledeau and Robinson cases are relied on for the holding "that the exigencies of the situation did not require the stopping of the car as abruptly as it was in fact stopped, and that in thus stopping the motorman was negligent."

The order of the District Court is reversed, and the action is remanded for the entry of an order allowing the claim in accordance with the Master's recommendation.

CHASE, Circuit Judge (dissenting).

It is clear that the claimant had the burden of proof and the real issue before us is whether the judge was right in holding that she did not discharge that burden by a preponderance of the evidence.

The only possible breach of any duty owed the claimant was the stopping of the trolley car more abruptly than a prudent man would have stopped it in a like situation. If an emergency stop was made necessary by the action of the automobile, it is obvious that the motorman had no time to make such an analysis of relative speeds and distances as has been made in the majority opinion but had to act quickly to avoid a collision. His conduct is to be judged in the light of the conditions he faced. If a collision was avoided by only about

738

three feet, it was narrowly enough averted to show that an emergency application of the brakes was the action of a reasonable and prudent motorman in like circumstances. Indeed, the motorman actually took practically all the time and space he had available in which to make the stop.

That hard little fact left the claimant's proof short of a preponderance in favor of the motorman's negligence as the experienced judge below recognized.

There was evidence to justify finding that the emergency stop held the trolley but three feet short of collision. The master made no direct finding as to that important fact. The judge gave it due force. While the facts found by a master from evidence he has seen and heard witnesses give should be accorded great weight, in the end the responsibility for the facts is that of the judge. In re Michel, 2 Cir., 56 F.2d 15; In re M. & M. Mfg. Co., 2 Cir., 71 F.2d 140; In re Byrd Coal Co., 2 Cir., 83 F.2d 190. Having done his duty by giving effect to an important fact which the master did, not deal with adequately, the judge correctly held that the claimant had failed to prove her claim.

The order should be affirmed.