[L. A. No. 5973.  In Bank.—February 1, 1921.]

## W. W. GATES, Appellant, v. C. W. PENDLETON, Sr., et al., Respondents.

[1] NONSUIT—INTERPRETATION OF EVIDENCE.—Upon a motion for a nonsuit the evidence must be interpreted most strongly against the defendant, and unless the evidence for plaintiff is so weak as not to be capable of sustaining a decision in his favor, the judgment must be reversed.

[2] NEGLIGENCE—AUTOMOBILE ACCIDENT—STATUS OF DRIVER—REASONABLE INFERENCE FROM EVIDENCE—ERRONEOUS NONSUIT.—Where a father sent an invitation to his son by the latter's law clerk to join the father and certain other persons as a guest and take them to the place of entertainment in the son's automobile, and the son declined the invitation but permitted the law clerk to use the machine to drive the parties to the place of destination, and the father was advised of the son's declination and permission, the inference is reasonable that the father was in charge of the expedition and responsible for the negligence of the driver, and the granting of a nonsuit on the theory that the driver was a fellow-guest was erroneous.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Fred H. Taft, Judge.  Reversed.

The facts are stated in the opinion of the court.

Thomas K. Case for Appellant.

E. J. Emmons, C. W. Pendleton, Sr., *in pro. per.*, C. W. Pendleton, Jr., *in pro. per.*, C. C. Trott and Edwin A. Meserve for Respondents.

SLOANE, J.—The only question on this appeal is in fixing the liability for damages to plaintiff for injuries suffered in an automobile accident.

The plaintiff was run over and seriously injured by the reckless negligence of the driver of an automobile owned by

2.  Making of *prima facie* case for responsibility for negligence of driver of automobile by proof of defendant's ownership of car or employment of driver, notes, 46 L. R. A. (N. S.) 1091; L. R. A. 1918D, 924.

the defendant, C. W. Pendleton, Jr., and in which C. W. Pendleton, Sr., was a passenger.

It is alleged that the driver at the time of the accident was in the employ of Pendleton, Jr., and under the direction and in the immediate service of Pendleton, Sr.

At the conclusion of plaintiff's evidence the trial court granted a motion for nonsuit as to both defendants. It is claimed by appellant that no grounds for the nonsuit were specified in the motion, but it sufficiently appears that the motion was submitted on the insufficiency of the evidence.

At any rate, no prejudice can have resulted from any failure to more specifically state the grounds of the motion. Plaintiff had introduced all his evidence and submitted his case, and the only point at all in controversy was as to whether both, or either of the respondents here, were liable for the negligence of the driver of the automobile.

The trial court granted the motion for nonsuit. [1] Upon such a motion the evidence must be interpreted most strongly against the defendant, and unless the evidence for plaintiff is so weak as not to be capable of sustaining a decision in his favor, the judgment must be reversed. The uncontradicted evidence bearing upon this point was that the senior Pendleton, with a number of other gentlemen, had been invited to a dinner tendered them by a mutual friend. The place of entertainment was at some distance away and the host had informed Pendleton, Sr., that if he had a friend with an automobile who would bring him and two or three of the guests who were to accompany him, he could invite the automobile provider along also as a guest. The testimony of Pendleton, Sr., in this particular was: "Why, General Last [the host] suggested that if I knew of anyone who had a car who could take a part of his party down to the place where we were going he would invite him along as a guest. . . . I told him that my son [C. W. Pendleton, Jr.] had a car, and, while he was away, he was expected home early in the morning, the day on which the excursion was fixed, and I would ask him to take me down." In pursuance of this arrangement Pendleton, Sr., sent word to his son by one Clarence Toll, who afterward was the driver at the time of the accident. Toll was a clerk in the law office of Pendleton, Jr., and sometimes drove members of the family, including Pendleton, Sr., in his employer's automobile.

He was not, however, employed as a chauffeur, the younger Pendleton having a regularly employed chauffeur. On this occasion, however, young Toll was to meet Pendleton, Jr., with the car on his return from the trip on which he was then absent. In the words of the elder Pendleton: "I sent word to him by Toll, as he left me by the corner, to tell my son about the party and ask him if he would not go along and take a number of people that were there. Clarence came back alone and said that my son, having just come home, had told him that he had some things to attend to and would not go, but would let him have the car. Q. Did you send Toll to your son for the car? A. No, I told Toll, as I stated to you, about the matter, to tell my son on the way up, ask him if he would not go down and take a number of the party. That is the message that I give to Toll." Pendleton, Jr., testified that he had no conversation with his father about the use of the machine. His statement of the matter is: "I had no conversation with my father about it; Toll told me what his connection was in a way. He wanted to know if I objected to the car being used for that purpose and I said, 'No.'" "I do not know of my own personal knowledge where they were going. Question by the Court: I understand you to say, Mr. Pendleton, Mr. Toll came and said—asked if you had any objection to your father using your machine. A. Yes. Q. And you said, 'No'? A. That is true. Q. You knew that from your foreman, the machine was for him. You knew nothing about the matter at all? A. That is a fact. I had no concern in the matter. Q. All you know is your man came to you to get the machine for your father and you let him have it? The Court: That has been gone over. He has told what happened." This is all the evidence produced in the case as to the circumstances under which the use of the car and the services of Toll as its driver were procured.

The party, including Pendleton, Sr., and two or three others of the invited guests, with Toll as driver, went in this automobile to the dinner which was given in the afternoon. It does not appear that Pendleton took any particular charge of the trip or gave any directions to Toll. After the dinner the party started on their return at Pendleton's suggestion about dusk in the evening, and in passing a street-car ran

into several persons about to board the car, among whom was the plaintiff.

It is quite clear that the defendant C. W. Pendleton, Jr., was not liable for the negligent driving of the automobile by Toll on this occasion. At most he had but loaned his machine to Toll or his father, or both of them, in a matter of which he had no particular knowledge and no personal concern.

The connection of the defendant C. W. Pendleton, Sr., with the transaction is that he wanted his son to join the party as a guest and drive them to their destination. He sent a message to this effect to his son by Toll. Toll returned with the automobile, reporting that the son had declined the invitation, but had let him, Toll, take the car. Pendleton, Sr., testifies that he did not ask Toll to get the car, but only to ask the son to come and take them in it to the dinner. Toll acted on his own initiative in procuring the use of the car and bringing it for the use of the party. The statement of the son that he loaned the car to Toll and his father cannot bind the latter unless he had authorized or requested Toll to get the use of it for him, or unless, with knowledge that the auto with Toll as its driver had been furnished to him by his son, he accepted the use and service so tendered.

The theory of the defendants, apparently adopted by the trial court and district court of appeal, is that Toll having procured the use of the automobile on his own responsibility from his employer, offered himself as a substitute for the younger Pendleton, and, in the role of a fellow-guest, invited the Pendleton party to ride with him to the dinner.

[2] We do not think that this conclusion can be reasonably entertained from the evidence. There is no dispute as to the facts. It is merely a question as to the inferences to be drawn from the undisputed testimony, and we do not lose sight of the rule that the decision of the trial court must stand if upon a consideration of all the circumstances defendants' theory of the case is reasonably supported.

From the testimony of the younger Pendleton it seems entirely clear that he was offering his automobile with Toll as a driver for the use of his father. It does not seem to us credible that the elder Pendleton understood the situation in any different way. It is true he had not asked for the

use of the machine, but had sent an invitation to his son to join him and his friends as a guest and take them to the place of meeting. But when young Toll returned and reported that the son had told him "he had something to attend to and could not go but would let him [Toll] have the car," the father must have understood, what was the fact as shown by the son's testimony, that the car and driver were furnished for his use.

There is no direct testimony that Toll was a guest or considered as such, and such a conclusion is not consistent with the circumstances. The only testimony is the statement of Pendleton, Sr., in answering the question, "Was you wanting him to go merely as a guest, or driver of the machine?" that "I didn't want him particularly to go myself, but he was invited as a guest." The invitation referred to was apparently the suggestion of General Last that they could bring as a guest anyone who would bring them to the dinner in his automobile. This was a dinner party given by General Last to old friends who had been members of his staff "many years ago." Some of them apparently were military men. One Colonel Houston was a member of the Pendleton party. Although there is no specific evidence on that point, the fair inference is that they were middle-aged gentlemen. Clarence Toll was a youth of twenty-two or twenty-three years. He was a clerk and law student in the younger Pendleton's law office, "a general utility man in the office" who sometimes acted as his employer's chauffeur. There is no evidence that he sat at the dinner-table with the guests. Pendleton, Sr., the only witness on the subject, says he did not see him. He did make some suggestion to Toll about starting for home. He says: "When they all got loaded, I believe I suggested to him that everybody was going, let us go."

We assume that the somewhat ambiguous and equivocal reference to getting "loaded" has the automobile and not the passengers as its objective. That the driver had been imbibing, however, is indicated by his reckless driving on the return trip and the testimony of a witness who saw the accident, that the driver appeared to be under the influence of liquor, and that he smelled it on his breath. He drove the car with Pendleton and his companions at a rate of between thirty and forty miles an hour, according to the

CLXXXIV Cal.— 51

evidence, past a standing street-car and into a group of passengers about to board the car. Five of them were injured, including the plaintiff, and two afterward died. Toll was arrested, tried, and convicted of manslaughter. Probably the extent and degree of Toll's culpability for the accident does not throw any light on his relations to the other members of the party, but all the circumstances taken together make exceedingly incredible the suggestion that he was acting as a fellow-guest of these gentlemen and conveyed them to the party on his own initiative and responsibility.

We think the conclusion could reasonably be reached from the evidence that C. W. Pendleton, Sr., was in charge of the expedition.

The judgment is reversed.

Olney, J., Lawlor, J., Wilbur, J., and Lennon, J., concurred.

Rehearing denied.

All the Justices concurred, except Angellotti, C. J., who did not vote.