[S. F. No. 10402. In Bank.—July 1, 1924.]

ALEXANDER SZOPIERAY, Jr., a Minor, etc., Appellant, v. WEST BERKELEY EXPRESS & DRAYING COMPANY et al., Respondents.

[1] NONSUIT—CONSTRUCTION OF EVIDENCE—RULES.—A motion for nonsuit assumes as true every fact which the evidence and the inference, fairly deducible therefrom and every presumption fairly arising from the evidence tend to prove, and which was essential to entitle the plaintiff to recover. On such motion the evidence must be taken most strongly against the defendant. Contradictory evidence must be disregarded and the motion denied if

1. See 10 Cal. Jur. 1164.

there is any substantial evidence tending to prove plaintiff's case without passing on the sufficiency of such evidence. The rules as to a nonsuit are the same whether the trial is by the court or by a jury.

[2] NEGLIGENCE—PASSING OF TRUCK OVER CHILD'S LEG—SUFFICIENCY OF EVIDENCE—NONSUIT.—In this action for damages for personal injuries occasioned by a truck passing over a child's leg, it is held that, although there was no direct evidence that the truck moved and that such movement was the cause of the injury, there was sufficient indirect evidence tending to show that the proximate cause of the accident was the passing of the truck over the leg of the child, and the trial court erred in granting a nonsuit.

[3] ID.—PLEADING—CITY ORDINANCES—EVIDENCE.—In such an action there is no error in striking from the complaint the allegation of the city ordinance regulating, among other things, the hitching and control of horses and mules upon the public streets, "provided, however, any such animal may be securely checked by a rein or line attached by a ring to a hook firmly fastened to the seat of the vehicle drawn by such animals, and by having at the same time a good and sufficient brake attached to such vehicle and firmly set," as such action is not one for the violation of the ordinance, and the ordinance is admissible in evidence without being pleaded.

[4] ID. — PROXIMATE CAUSE OF INJURY — VIOLATION OF ORDINANCE — QUESTION OF FACT.—In such a case it is error to sustain objection to the introduction in evidence of such ordinance, on the ground that it is not shown that the violation thereof was the proximate cause of the accident, as the jury might have found that such violation contributed to the proximate cause.

---

3. Admissibility of ordinance not pleaded in order to prove negligence, note, 16 **Ann. Cas.** 1064. See, also, 18 **Cal. Jur.** 925; 19 **R. C. L.** 907.

(1) 38 Cyc., pp. 1551, 1553, 1554, 1558, 1947.   (2) 28 Cyc., p. 913. (3) 29 Cyc., p. 568; 31 Cyc., p. 640.   (4) 28 Cyc., pp. 913, 915.

APPEAL from a judgment of the Superior Court of Alameda County.   A. F. St. Sure, Judge.   Reversed.

The facts are stated in the opinion of the court.

Ostrander & Carey for Appellant.

George Gelder, Nusbaumer & Bingaman and Chris B. Fox for Respondent.

LAWLOR, J.—This is an action for damages for personal injuries to a minor, alleged to have been caused by a truck heavily laden and driven by horses passing over the child's left leg, crushing it and rendering amputation necessary. The complaint was demurred to and an amended complaint filed. Issue was joined on the facts of the accident, contributory negligence was pleaded, and the answer further alleged that the parents of the minor "are guilty of negligence in allowing said child of such tender years to be alone upon said public street." When the plaintiff rested a motion for nonsuit was interposed and granted. The plaintiff appeals.

1. Appellant claims the court erred in granting the motion for nonsuit. We quote the specified grounds of the motion: "We move for a nonsuit on the ground that the plaintiff does not show that the defendants, or either of them, were guilty of any kind of negligence, either in the handling of this team or in doing any affirmative act, or in omitting to do any act, the duty of doing which rested upon them or either of them. We move for a nonsuit on the ground that the evidence does not show that by any act, either of negligence, or otherwise, of these defendants, or either of them that an injury was inflicted upon or received by this child. We again move on the ground that the evidence is entirely silent as to how or in what way this child was injured. We invoke the principle of law where it is not shown how the accident happened the burden of proof is upon the plaintiff to show that the defendant was guilty of negligence. The plaintiff fails to show that the defendant was guilty of negligence, not only by no preponderance of evidence but by any evidence at all. And that we claim is the situation in this case. There is no testimony, no eye-witness saw this accident, so there is no scintilla of evidence here of any kind showing how the accident occurred. And, in order to fasten any negligence upon the defendant it must be shown by a preponderance of the evidence that by some act or omission or commission he was negligent. These are the grounds upon which we move for a nonsuit."

[1] It was said in *Grummet* v. *Fresno Glazed Cement Pipe Co.*, 181 Cal. 509 [185 Pac. 388] : "The law governing motions for nonsuit is well settled in this state. In *Marron*

v. *Marron,* 19 Cal. App. 328 [125 Pac. 914], it was said: 'A motion for nonsuit assumes as true every fact which the evidence, and presumptions fairly deducible therefrom, tend to prove, and which was essential to entitle the plaintiff to recover. (*Estate of Arnold,* 147 Cal. 583 [82 Pac. 252].) On such motion the evidence must be taken most strongly against the defendant. Contradictory evidence must be disregarded (*In re Daly,* 15 Cal. App. 329 [114 Pac. 787]), and the motion denied if there is any substantial evidence tending to prove plaintiff's case without passing on the sufficiency of such evidence. (*Zilmer* v. *Gerichten,* 111 Cal. 73 [43 Pac. 408]; *Vermont Co.* v. *Declez,* 135 Cal. 579 [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1057].) The rules as to a nonsuit are the same, whether the trial is by the court or by a jury. (*Freese* v. *Hibernia S. & L. Soc.,* 139 Cal. 394 [73 Pac. 172].)' "

In substance the testimony is as follows: At about 9:30 A. M. on September 14, 1917, the plaintiff, a child of three years of age, with the knowledge of its mother, left its home, two hundred feet from the northeast corner of Addison and Eighth Streets in the city of Berkeley, to go to the house of his aunt who lived on the northwest corner of said streets, distant from the Szopieray residence about two hundred feet. Mrs. L. T. Wilson, a witness for appellant, on returning from market saw the child sitting on the sidewalk leaning against the fence opposite the horses attached to the truck. She entered her house and after busying herself for about five minutes looked out of the window and saw him playing at the left hind wheel; he was playing "by rubbing his fingers along the spokes of the rear left wheel." About one-third of the truck was visible to her. She left the window and hearing a scream she walked across to the window and saw the boy sitting on the street about four feet behind the wagon, with a man supporting him. At no time did she observe any driver on, about or near the wagon. According to this witness the boy was not bleeding but there was blood on the street in front of him but not where he was sitting. She saw an automobile in that vicinity. Emil Turpin, called as a witness on behalf of the appellant, testified that while at work in his yard he noticed a truck loaded with boxes of grapes, to which two horses were attached, standing on Eighth Street north of Addison

Street and that the team was not tied. He saw someone taking a bunch of grapes from the truck and about half an hour later, hearing a cry, he ran to the truck and saw the teamster holding the child in his arms. He also testified that "The little boy was about two feet behind the left hind wheel, back of the hind wheel." He said he did not see the truck move but "I had seen the truck before that on that day, prior to that time, standing on Addison Street." Frank Sabine, a witness called on behalf of appellant, testified that while at work in the Ramos coal-yard he saw the truck standing on Eighth Street; that it was there about three-quarters of an hour during which time the driver was standing inside the coal-yard; that someone hollered "Whoa" and everyone rushed outside; that there were other horses in the coal-yard at the time, and that he was up in the loft and when he got out the child had been taken to the hospital. The doctor, Julian J. Benton, a witness for appellant, testified that "The thigh, the muscles of the thigh were crushed and the macadam ground into the muscles, into the leg itself, and the tibia torn from its articulation, I mean the fibula torn from its articulation with the tibia. That means the joint of the small bone of the leg with the large bone at the knee, torn asunder. . . . Q. What did you find was the injury with reference to the muscular structure of the leg between the knee and the foot? A. Crushed and torn from the bones entirely; the calf of the leg, what is commonly called the calf of the leg. The skin was torn from the shin bone. Of course, there are no muscles there; the skin was torn away. The skin together with the calf, the muscles composing the calf was torn away from the bones entirely. The whole thing was crushed entirely, entirely severed from the bone, from the bony structure, not only that, but the macadam ground into the muscles and the skin. It was absolutely necessary to amputate it, because it was impossible to get healing without. It was impossible to get healing in the first place, and in the second place gangrene would have set in within twenty-four or forty-eight hours with the accompanying absorption of what is commonly called blood poison later, and besides that he would never have got any cover whatsoever to the part, the skin was so mutilated and the muscular attachment being torn from the leg and the macadam gone into it, amputation was absolutely

necessary to save the boy. . . . Q. From the nature of those injuries, Doctor, could you state whether or not it could be the result or likely to be the result of great weight upon the leg to produce this crushed condition, or could that be done with just dragging? A. It could not be done by dragging, utterly impossible. Q. Would it indicate a great weight? A. Absolutely a crushing weight, yes.'' Respondent Louis Erickson, called by appellant, testified that the truck loaded with grapes would weigh between five and six tons; that it was not equipped with brakes of any kind; that the reins were equipped with rings and there was a hook in the dashboard to fasten them on; and that ''He had them off and on.''

Appellant argues that there was sufficient evidence to support a finding that the injury was caused by the moving of the truck and that such moving was due to the negligence of the driver.

Respondents argue that if the chain of evidence is interrupted by a failure to prove a material fact, such as the act or instrumentality which caused the injury, or by an intervening independent or efficient cause, that it is the duty of the court to withdraw the case from the jury by granting a motion for nonsuit. It is contended that it has not been shown that any negligent moving of the wagon was the cause of the injury.

[2] It is true there is no direct evidence that the truck moved and that such movement was the cause of the injury. In our view, however, there is sufficient indirect evidence tending to show that the proximate cause of the accident was the passing of the truck over the leg of the child. There is evidence that before the accident the minor was near the left hind wheel passing his fingers over the spokes; that blood stains were found on the roadway, say two feet from the truck and an equal distance from where the child was picked up. The doctor testified that the condition of the leg was caused by ''absolutely a crushing weight.'' No blood was seen where the baby was sitting when the driver reached him. This might indicate that all the blood had been forced from the limb by the heavy weight of the truck. All the flesh was torn from the bone, the limb ''was crushed entirely . . . macadam was ground into the muscles and the skin.'' Because of the condition of the leg amputation was

found necessary. There is no intimation in the evidence that between the time Mrs. Wilson saw the child at the wheel and heard the scream any other vehicle passed along the street or was near the child. According to the physician the injury was not caused by dragging. It is more likely that the baby moved slightly away from the truck after it passed over the leg and before it felt the pain. The testimony is that when the mother reached the baby after Mrs. Wilson informed her of the accident it was not crying. It would be entering the realm of pure speculation to hold that any other vehicle or cause other than the heavy truck injured the child. The jury might under the evidence have concluded that the cry "Whoa" was addressed to the team attached to the truck. This would tend to prove that the horses had moved. Furthermore, only a slight movement of the truck would be sufficient to produce the injury and it would be almost impossible for the witnesses to have observed such movement from the position of the truck. It may be noted that the driver of the truck was not produced as a witness.

It has been declared that "Upon a motion for nonsuit the evidence must be interpreted most strongly against the defendant." (*Gates* v. *Pendleton,* 184 Cal. 797 [195 Pac. 664].) "The motion for a nonsuit being in effect but a demurrer to the evidence received in support of the plaintiff's case, presented for the decision of the trial court purely a question of law, and, therefore, for the purpose of the motion, assumed the truth of all the evidence educed in support of the plaintiff's case. This is the settled and generally well understood rule, and taking such evidence as true, it was the duty of the trial court, without regard to the conflicts, if any, appearing therein, to adopt only those inferences, reasonable, of course, fairly deducible therefrom, which were most favorable to the plaintiff." (*Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335 [208 Pac. 125].) "While the proof must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged, yet, where the evidence is such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists, it is a sufficient answer to a motion for a nonsuit." (*Scheuermann* v. *Kuetemeyer,* 186 Cal. 225 [199 Pac. 13] syllabus.) Taking into account all the testimony in the case,

including the inference which the jury might have drawn therefrom, it cannot be held that it was not sufficient as matter of law to justify the jury in concluding that the proximate cause of the injury was the movement of the truck.

[3] 2. Appellant assigns error to the ruling of the court in striking from the complaint the allegation of Ordinance No. 107 (N. S.) of the city of Berkeley, regulating, among other things, the hitching and control of horses and mules upon the public streets; "provided, however, any such animal may be securely checked by a rein or line attached by a ring to a hook firmly fastened to the seat of the vehicle drawn by such animals, and by having at the same time a good and sufficient brake attached to such vehicle and firmly set." The motion was granted on the ground that said words are surplusage and redundant. This was not an action for a violation of an ordinance, and, as was held in *Martin* v. *Shea*, 182 Cal. 130 [187 Pac. 23], the ordinance "was admissible without being pleaded, since the cause of action was not a violation of the ordinance, but the negligence of the defendant in maintaining the trench without barriers or lights, and the ordinance was evidence of such negligence." (See, also, *Opitz* v. *Schenck*, 178 Cal. 636 [174 Pac. 40].) The ruling was correct.

[4] 3. It is claimed by appellant that the court erred in sustaining objections to the introduction in evidence of said Ordinance No. 107 (N. S.). In addition to the conventional objections it was stated that "it does not meet any issue in this case, or any set of facts under which this ordinance may materially be considered." It is claimed in respondents' brief it was not shown that the violation of the ordinance was the proximate cause of the accident. But if the ordinance had been received in evidence it cannot be said the jury might not have found that the violation thereof contributed to the proximate cause of the injury. The ruling was erroneous.

Judgment reversed.

Lennon, J., Shenk, J., Seawell, J., Richards, J., Waste, J., and Myers, C. J., concurred.