[Civ. No. 6743. First Appellate District, Division One.—June 11, 1929.]

MURLE PREO, Respondent, v. B. A. ROED et al., Appellants.

Fenston, Williams & Hansen and Frank Kauke for Appellants.

Gallaher & Jertberg for Respondent.

CAMPBELL, J., *pro tem.*—In this action the jury found for the plaintiff and against the defendants and assessed plaintiff's damages in the sum of seven thousand five hundred dollars. From the judgment entered upon this verdict defendants have appealed.

The action grew out of a collision which took place between a truck owned by defendant B. A. Roed, which was being operated by his brother, L. A. Roed, and a motorcycle driven and ridden by plaintiff, it being alleged that defendant B. A. Roed was delivering milk of the Jersey Farm Dairy Company, under which name defendant Frank M. Helm, Inc., was doing business, and the damages awarded were for personal injuries received by plaintiff as the result of such collision.

Appellant B. A. Roed has filed no brief, and appellant Frank M. Helm, Inc., in its brief, contends that the judgment should be reversed for the reason that defendant B. A. Roed, whose truck, which was driven by his brother, L. A. Roed, and which collided with the motorcycle driven and ridden by respondent, was not an employee of defendant Frank M. Helm, Inc., but was an independent contractor. Respondent disputes this contention and urges that the evidence and inferences properly deducible therefrom sufficiently support the allegation that B. A. Roed was at the time of the accident in the employ and acting as the servant and agent of appellant Frank M. Helm, Inc., and further urges that the reporter's transcript on appeal—the appeal having been taken under the alternative method—cannot be considered for the reason that the notice of appellant to the clerk to prepare the transcript under the provisions of section 953a of the Code of Civil Procedure was not given

within the time allowed by law, and this court is without jurisdiction to avail itself of the reporter's transcript, and, therefore, the clerk's transcript is the only record in the case properly before the court.

This latter contention of respondent is based upon the fact that the notice to the county clerk requesting that the transcript of the testimony, etc., be made up and prepared was not filed with the clerk within ten days after the motion for new trial was denied by operation of law under section 660 of the Code of Civil Procedure—the motion not having been made nor acted upon by the court within the two months' period prescribed by the statute. No notice of the termination of the proceedings for a new trial was given under section 953a of the Code of Civil Procedure. In support of his position respondent cites *Bernschein* v. *Whitaker*, 175 Cal. 130 [165 Pac. 523], as holding that under the situation presented here the court is without jurisdiction to avail itself of the reporter's transcript. That case, however, is overruled in the recent case of *Anstead* v. *Pacific Gas & Elec. Co.*, 201 Cal. 198 [256 Pac. 209], where the court, in passing on the precise question involved here, says: " . . . under the provisions of section 953a of the Code of Civil Procedure, when a proceeding upon motion for a new trial is pending, the time of the appellant to give and file his notice and request for a transcript does not expire until 'ten days after notice of decision denying said motion *or of other termination* thereof.' . . . The case of *Bernschein* v. *Whitaker*, 175 Cal. 130 [165 Pac. 523], in so far as it is in conflict with the foregoing views, is overruled." Under this authority we must hold the reporter's transcript before us and available for use in determining the point urged by appellant Frank M. Helm, Inc., that defendant Roed was not an employee of defendant corporation, but was an independent contractor.

The facts of the case are as follows: Frank M. Helm, Inc., a corporation, was at the time in question transacting business under the name of Jersey Farm Dairy Company, handling dairy products in the city of Fresno. Several years prior to the accident complained of there was an association of dairymen known as the San Joaquin Valley Milk Producers' Association. The Jersey Farm Dairy Company purchased from the San Joaquin Valley Milk Producers'

Association milk delivered at its depot in Fresno, and the defendant B. A. Roed, under an agreement made by him with the association, gathered up milk from the various dairymen producers and hauled or delivered the milk to the corporation. The association went out of business, and, instead of having a contract for the purchase of milk from an association, the corporation made separate contracts with the individual dairymen, respectively, and the defendant B. A. Roed continued to haul milk to the depot of the corporation. According to the testimony of J. S. Canham, manager of the corporation, "there are drivers that had their entire route, when we took them on, same as in the case of Roed, and several others." Each contract made by the corporation with the dairymen contained the provisions that the seller agreed to sell and deliver at the buyer's premises all the milk produced from a certain number of cows or from a certain dairy, and that the milk was to be delivered twice each day at the buyer's premises at 1820 Tulare Street, Fresno, California, and that payments for all milk delivered during each month were to be made on the 15th of the following month. The rate paid to defendant Roed, according to his testimony, is fixed by the dairymen. The rate when the association ceased and the corporation took the milk direct from the dairymen was the same as formerly paid by the association, but four or five years ago the dairymen complained and the rate was reduced. The corporation each month paid Roed his delivery charges and paid the dairymen the amount due them for milk delivered after deducting the hauling charges paid to Roed. In a few instances dairymen who had contracts for delivery of milk to the Jersey Farm Dairy Company protested to J. S. Canham, manager of the corporation, that the price of delivery was too high. On each of these occasions Mr. Canham referred them to B. A. Roed and notified B. A. Roed of the protest. If a new customer was secured the manager of the corporation would either tell the driver to call at the new customer's place and get his milk or would tell the dairyman to hail the driver and send his milk in.

From the foregoing facts respondent urges that the inference may be properly drawn that defendant B. A. Roed was the servant of Frank M. Helm, Inc. We question this conclusion. Section 2009 of the Civil Code provides: "A

servant is one who is employed to render service to his employer, otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter, who is called his master.''

An independent contractor is one who renders service in the course of an occupation, representing the will of his employer as to the result of his work only and not as to the means by which it is accomplished. (*Fidelity & Casualty Co.* v. *Industrial Acc. Com.*, 191 Cal. 404 [43 A. L. R. 1304, 216 Pac. 578].) In *Luckie* v. *Diamond Coal Co.*, 41 Cal. App. 468, 480 [183 Pac. 178, 183], the court says: ''The accepted doctrine is that, where the essential object of the employment is the performance of the work, the relation of master and servant does not exist unless the employer retains the right to direct the mode and manner in which the job shall be done; or, in other words, not only what shall be done, but how it shall be done. (Labatt on Master and Servant, sec. 64; *Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807 [159 Pac. 721].) 'The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for' (*Green* v. *Soule,* 145 Cal. 96, 99 [78 Pac. 337, 339]). He is deemed to be the master, who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate results of the work, but in all the details.'' The facts in the case of *Western Indemnity Co.* v. *Pillsbury, supra,* are somewhat similar to the facts in the present case.

Here, as in that case, the manager of the corporation directed the person employed in the matter of the material to be hauled; there was no arrangement whereby the person employed was to personally drive his truck or vehicle; he could place any competent man in charge, and here defendant Roed did in fact employ his brother, who was driving the truck at the time of the accident. Each month Roed received a check from the corporation representing the aggregate amount the various dairymen should pay to him for delivering the milk to the corporation. If in *Western Indemnity Co.* v. *Pillsbury* the injured party had been the employee of the owner of the team instead of the driver and owner, the situation would be the same as in the present case. Thus, if L. A. Roed had been injured while in his

brother's employ at a monthly wage and while driving his brother's truck as such employee, the corporation would not be liable to him under the Workmen's Compensation Act. If not liable to L. A. Roed in such case, it would seem that the corporation cannot be held liable for his negligence, if any there were, whereby plaintiff was injured. The following language from the opinion by Mr. Chief Justice Holmes in *Driscoll* v. *Towle,* 181 Mass. 416 [63 N. E. 922], quoted in *Western Indemnity Co.* v. *Pillsbury, supra,* is apropos here: "In cases like the present there is a general consensus of authority that, although a driver may be ordered by those who have dealt with his master to go to this place or that, to take this or that burden, to hurry or to take his time, nevertheless, in respect to the manner of his driving and the control of his horse he remains subject to no orders but those of the man who pays him. Therefore he can make no one else liable if he negligently runs a person down in the street."

■ Respondent argues that since the contracts provide that the dairymen will respectively deliver their own milk, and since B. A. Roed did deliver the milk and was paid by Frank M. Helm, Inc.—even though paid from funds belonging to the dairymen—the conclusion follows that the corporation employed B. A. Roed to deliver the milk purchased by the corporation and the jury was obliged to accept the failure of either of these defendants to produce the evidence of a contract between them made for the delivery of the milk by B. A. Roed as strong evidence that such contract, if shown by the evidence, would be adverse to the contention of defendants, and cites section 1963 of the Code of Civil Procedure, providing that certain presumptions are satisfactory, if not contradicted, as follows: "Subdivision 5. That evidence wilfully suppressed would be adverse if produced; subdivision 6. That higher evidence would be adverse from inferior being produced." Respondent also cites from section 2061 of the same code: "That evidence is to be estimated not only by its intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict, and, therefore, that if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory evidence was within the power of the party, the

evidence offered should be viewed with distrust.'' We fail to see the application of these sections to the record here presented. ▪▪▪ Plaintiff's motorcycle collided with a truck operated by L. A. Roed, which truck was the property of defendant B. A. Roed. Therefore there arose an inference that L. A. Roed was at the time, and in the line or course of his employment, operating the truck as an employee or servant of defendant B. A. Roed, and if in fact he was not then acting as such employee or servant, it devolved upon defendant B. A. Roed to show the status or relationship at the time of the accident, if that inference was to be dispelled (*Maupin* v. *Solomon*, 41 Cal. App. 323 [183 Pac. 198]; *Brown* v. *Chevrolet Motor Co.*, 39 Cal. App. 738 [179 Pac. 697]). The fact that the truck was hauling milk, which upon its arrival in Fresno would be received by the corporation, did not create an inference or presumption that either defendant B. A. Roed or L. A. Roed was an employee or servant of the corporation any more than a railway company transporting merchandise from one party to another is the servant of the party sending or the party receiving the merchandise, or that a truckman hauling a farmer's wheat to a grain merchant—who may be authorized to pay the truckman and deduct the amount of the cartage from the seller's proceeds—is the servant of the merchant.

▪▪▪ The plaintiff sought to recover against the corporation upon the theory of *respondeat superior*. The burden, therefore, of proving the relation of master and servant or employer and employee was upon plaintiff. The plaintiff called for cross-examination the manager of the corporation and the defendant Roed; and while showing that the milk was being conveyed by a truck to be delivered to the corporation, and that the compensation to be received by defendant Roed would be handed to him by the corporation, the plaintiff by such witnesses also established the fact that the defendant Roed was not an employee or servant of the corporation, but that he was an independent contractor. It is true that these witnesses were called for cross-examination under section 2055 of the Code of Civil Procedure and plaintiff was not bound by their answers, but their testimony, however, is in no manner refuted by any other witness.

The *quantum* of proof necessary for the plaintiff to produce when relying on the doctrine of *respondeat superior* is stated in *Kish* v. *California State Automobile Assn.*, 190 Cal. 246, 251 [212 Pac. 27, 29], as follows: "It is insisted by plaintiff that the evidence adduced having conclusively shown the relation of master and servant, a *prima facie* case was made out of the responsibility of the master which must be overcome by the defendant, and that a nonsuit was, therefore, improper. But to recover against an employer upon the theory of *respondeat superior* it is necessary for the plaintiff to establish the two distinct facts of (1) the status of master and servant and (2) that the act was done within the scope of the servant's employment."

Defendant Roed did not take orders from anyone as to the manner of doing the work, or how he was to haul the milk, whether by team or automobile truck, or who was to operate or drive the truck or vehicle. He was responsible only for gathering up the milk, transporting it safely and delivering it at the depot of the corporation within the hours agreed upon by the dairymen and the corporation, and was, therefore, not the servant of the corporation.

*Stedman* v. *Stedman*, 179 Cal. 288 [176 Pac. 437], holding under sections 1963 and 2061 of the Code of Civil Procedure that where weak corroboration was offered where stronger evidence was possible, the court was bound to presume under the circumstances that their testimony would be unfavorable and was for that reason suppressed, being a divorce action, where the statute requires the plaintiff to make out his case by sufficient corroborating evidence, has no application here.

As to appellant B. A. Roed, the evidence amply supports the judgment against him, and as against him the judgment is affirmed. It must, however, be reversed as against appellant Frank M. Helm, Inc., and it is so ordered.

Tyler, P. J., and Cashin, J., concurred.