[L. A. No. 15586.   In Bank.—February 14, 1936.]

JOSEPH CROUCH, a Minor, etc., Appellant, v. GILMORE OIL COMPANY, LTD. (a Corporation), Respondent.

HOMER L. CROUCH, Appellant, v. GILMORE OIL COMPANY, LTD. (a Corporation), Respondent.

JACK L. DORAN, Appellant, v. GILMORE OIL COMPANY, LTD. (a Corporation), Respondent.

HAZEL K. DORAN et al., Appellants, v. GILMORE OIL COMPANY, LTD. (a Corporation), Respondent.

Meserve, Mumper, Hughes & Robertson, J. D. Taggart, Baldwin Robertson and Timon E. Owens for Appellants.

Salisbury, Robinson & Himrod and W. B. Dennis for Respondent.

THOMPSON, J.—Four cases were brought against defendants for damages arising out of an automobile collision. They were consolidated, and after plaintiffs had rested their case the defendant Gilmore Oil Company, Ltd., a corporation, to which we may hereafter refer as the Gilmore Oil Company, made a motion for a nonsuit, which was granted. The case proceeded to judgment as between the remaining parties. The plaintiffs, however, prosecute this appeal from the judgment of nonsuit.

The individual defendants and representatives of the defendant corporation were examined by plaintiffs under section 2055 of the Code of Civil Procedure, with the apparent object of establishing that the defendant H. D. Shaw was an employee of the Gilmore Oil Company and acting within the scope of his employment at the time of the accident.

As the result of such examination, with its attendant cross-examination, the following essential facts were developed: The defendant Smith was the principal owner of the "Smith Tank Line Company", owning 25 or 30 trucks and engaged in the business of trucking gasoline as a common carrier. The Gilmore Oil Company was engaged in the production and sale of gasoline and oil. During the month of May, 1931, the defendant Smith, doing business under the name of Owens Valley Oil Company, and the Gilmore Oil Company entered into an agreement whereby the company was to sell Smith gasoline at their San Fernando bulk plant at their regular price, for the purpose of resale by Smith in a specified district north of Saugus and including the Owens valley. The defendant corporation was only supplying one customer in the granted district at the time, which customer was thereafter supplied by the Owens Valley Oil Company. For the purpose of carrying out the contract and of selling gasoline and oils, Smith purchased the truck involved in the accident. We may parenthetically remark that the truck was different in construction from any of those owned and operated by the Gilmore Oil Company. At Smith's request, the defendant corporation painted the truck in the colors used by it and about 4,500 service station operators on the Pacific Coast

selling its products, and on the sides painted the word "Gilmore" and on the rear its advertising "insignia", the lion's head. However, on the door of each side of the cab of the truck were painted the words "Owens Valley Oil Company". The defendant corporation sold Smith gasoline to operate his truck at one cent below its regular price. The defendant Shaw had been employed by Smith as a truck driver in his operation of the Smith Tank Line Company. Smith placed him in charge of the gasoline truck, with instructions to sell the gasoline and to that end to solicit regular business throughout the territory. At all times here involved Shaw's salary was paid by Smith, and the latter told Shaw "what to do". Actual operations started about May 20, 1931, at which time Shaw told a representative of the Gilmore Oil Company that they had no sales slips printed, and secured from him a pad of sales slips, contract forms for service stations and conditional sales forms for pumps. At the time and at his request, Shaw was informed and instructed, when filling out such slips or forms, to scratch out the name Gilmore Oil Company, Ltd., and in place thereof insert the name "Owens Valley Oil Company". Sales slips for the Owens Valley Oil Company were ordered and received about the first of June. Thereafter they were used exclusively. However, the suggested procedure was not followed with the borrowed forms in two sales slips, one conditional contract for one pump and in one place on one copy of a service station contract. The pump, however, was in no way connected with the Gilmore Oil Company, but was purchased by Smith from another concern. The service station contract with the purchaser of this particular pump discloses that Shaw did strike out the name of Gilmore Oil Company and substitute the Owens Valley Oil Company. It also appears that Shaw consulted a Mr. Boyd, with the Gilmore Oil Company, concerning the attitude of the major companies as to price cutting, and also asked him how "to go about" refusing to sell gas to a station where the contract provided that it might be terminated by a 24-hour notice. Evidence was adduced that prior to the agreement with Smith, the Gilmore Oil Company had refused to sell gas in tank lots to an operator of a station in the territory subsequently assigned to Smith, giving as its reason a rule that gas would not be sold at the refinery, nor

was anyone to get gas therefrom except in a company tank. In keeping track of gasoline sales to Smith, the Gilmore Company would, if it had any doubt about the amount in the truck when brought in with gasoline, take it back and credit Smith with the amount; otherwise it was simply filled up and a charge made for that amount. Sometimes, when gasoline was in the truck, it was left at the Gilmore San Fernando plant, but not at the garage where the company's trucks were housed. There was also testimony that one complaint was made to the company about the service, and it was immediately referred to Smith. However, the witness testified in effect that if Smith were to neglect ''a substantial number of Gilmore products customers he imagined that they would make arrangements to take over the territory themselves''. More than one year after the accident Smith withdrew from the arrangement he had with the Gilmore Oil Company and sold the truck to the company. At all times prior thereto the state license had been in Smith's name.

Under these facts we are concerned with whether the appellants, in order to recover upon the theory of *respondeat superior*, established sufficiently to go to the jury the two requisites of (1) the status of master and servant and (2) that the act was done within the scope of the servant's employment. (See *Kish* v. *California State Automobile Assn.*, 190 Cal. 246, 251 [212 Pac. 27], and *Preo* v. *Roed*, 99 Cal. App. 372, 380 [278 Pac. 928].) In determining the question our problem will be clearer and easier of solution if we inquire whether under the circumstances of the proof herein, verdicts for the appellants would have been allowed to stand, or whether judgments based thereon would have been reversed for lack of sufficient evidence. (*Robbiano* v. *Bovet*, 218 Cal. 589, 599 [24 Pac. (2d) 466].) It cannot be fairly doubted that Smith was an independent contractor and that Shaw was his employee. But, say appellants: An inference arises from the fact that the truck was painted with Gilmore colors and bore the company's advertising insignia, to the effect that Smith was in fact the agent of the Gilmore Oil Company. They say that the other circumstances strengthen the inference to such an extent that the jury would have been justified in returning verdicts for the plaintiffs. In denying a petition for a hearing in the case of *Maupin* v.

*Solomon*, 41 Cal. App. 323 [183 Pac. 198], holding such inferences "must yield to the direct and unequivocal evidence rebutting such inference", this court said: " . . . we desire to point out that respondent's *prima facie* case was based solely on an 'inference' and not on any 'presumption' declared by law. When we say that a certain inference is warranted by certain facts proved, we mean no more than that the jury is reasonably warranted in making that deduction from those facts. (Code Civ. Proc., sec. 1938.) In this case the direct uncontradicted evidence introduced in reference to the *prima facie* case as to the circumstances under which the employee of appellant was driving appellant's automobile was of such a nature as to leave no reasonable ground for an inference based solely on the fact of appellant's ownership of the automobile and the further fact that the person driving was an employee of appellant, that the driver was acting within the scope of his employment at the time of the accident. The verdict was, therefore, contrary to the evidence. . . . " Again in *Fahey* v. *Madden,* 56 Cal. App. 593 [206 Pac. 128], it is said: "The question is whether the inference on which the *prima facie* case of agency is based creates a substantial conflict against clear, positive and uncontradicted evidence to the contrary. Evidence could not well be more clear and positive than that given by defendants' witnesses relative to the subject under discussion, and it is apparently free from suspicion. Under such circumstances it must be held on the authority of *Maupin* v. *Solomon, supra,* that, as to the defendant Madden, it was error to submit the case to the jury. (See, also, *Brown* v. *Chevrolet Motor Co.,* 39 Cal. App. 738 [179 Pac. 697] ; *Gousse* v. *Lowe,* 41 Cal. App. 715 [183 Pac. 295] ; *Martinelli* v. *Bond,* 42 Cal. App. 209 [183 Pac. 461] ; *Gates* v. *Pendleton,* 184 Cal. 797 [195 Pac. 664].) "

To the same effect we may also refer to the more recent cases of *Market St. Ry. Co.* v. *George,* 116 Cal. App. 572 [3 Pac. (2d) 41], and *Ransford* v. *Ainsworth,* 196 Cal. 279 [237 Pac. 747]. In the latter case Mr. Justice Richards, writing the opinion, distinguished the cases of *Dierks* v. *Newsom,* 49 Cal. App. 789 [194 Pac. 518], *Grantham* v. *Ordway,* 40 Cal. App. 758 [182 Pac. 73], and *Randolph* v. *Hunt,* 41 Cal. App. 739 [183 Pac. 358], from those we have cited by

pointing out that in those cases, as in the Ransford case, the evidence was conflicting and hence the inference was not dispelled.

Commencing with the case of *Kish* v. *California State Automobile Assn., supra,* a little different phase of the same general question has been emphasized. In that case a nonsuit was granted, and on facts more strongly favoring appellant than those here involved. The court said: "If the same testimony which proved the relationship of master and servant proved that at the time of the act for which it is claimed the master was liable, the servant was not acting within the scope of and in the course of his employment, the *prima facie* case made by plaintiff is rebutted by the very proof offered to prove the first fact. It is not necessary, therefore, for the defendant to negate the master's liability, inasmuch as the plaintiff had done so herself. The proof at that stage lacks an essential element to support plaintiff's cause of action. . . . " This language may aptly be paraphrased and applied in the instant cause. It was approved and followed in *Lane* v. *Bing,* 202 Cal. 577, 580 [262 Pac. 317], and *Preo* v. *Roed, supra.* In all three cases the evidence relied upon to establish the inference was adduced, as it was in this case, by calling the defendants under section 2055 of the Code of Civil Procedure.

While we have set out the salient facts, yet it is only fair to declare that we have read the record in its entirety and feel constrained to say that the testimony of Smith's status and the ownership of the truck is free from suspicion, clear and convincing. Under such circumstances the court did not err in granting the nonsuit.

Judgment affirmed.

Shenk, J., Curtis, J., Langdon, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.