[Civ. No. 13140. First Dist., Div. Two. Mar. 11, 1947.]

MARGARET WILLIAMSON, Appellant, v. PACIFIC GREYHOUND LINES (a Corporation), Respondent.

Clarence N. Riggins for Appellant.

Cooley, Crowley, Gaither & Dana, and A. Dal Thomson for Respondent.

JONES, J. pro tem.—The respondent is a corporation operating stage lines between Napa and San Francisco. On the 4th day of September, 1943, Mrs. Williamson, the plaintiff, bought a ticket at Napa from the agent of the defendant, at the regular fare, for transportation to San Francisco. She boarded the bus of the defendant leaving Napa at 10:45 a. m., taking an aisle seat about four or five seats back of the driver and on the same side of the bus. The adjoining seat was occupied by another woman. The plaintiff was among the first passengers to board the bus, and she noticed racks along both sides above the seats of the passengers. She had no baggage of her own and saw none over the seat which she took. After she was seated she observed some luggage in the portion of the

rack to the front of her. No one was seen to inspect the placement of the baggage either at Napa or at Shellville, the next stop.

At a point beyond Shellville, and about twenty-one miles from Napa, the bus was held up temporarily on account of repairs being made to a bridge. After leaving the bridge, the driver of the bus speeded it up and shortly entered a sharp curve in the highway, at which point the bus swayed and jolted, and crashed with sufficient force to throw Mrs. Williamson against the lady seated next to her. Simultaneously with the jolt, a heavy suitcase fell from the rack, striking her on the head, right shoulder and arm. She was completely dazed by the blow and was rendered sick, nauseated, very nervous, and was in terrible pain and dizzy. She was too sick to notice things about her, and no attention was given her after she was hurt. When she arrived at San Francisco she was still bleeding at the nose. On leaving the bus, she told the driver that a suitcase had fallen on her, and he replied, ''Well, some people are careless,'' and shrugged his shoulders. She was too ill to attend to the purchase of a gift for her daughter, which she intended to make in San Francisco, and returned to Napa by the next bus.

On arriving at her home she tried to telephone her family physician, Dr. Baker, but was unable to reach him. She next called the Victory Hospital, but was told that they had no accommodations for her. She finally located Dr. Baker, who gave her treatment. Dr. Baker testified that his examination disclosed a contusion of the right temple, a contusion of the right shoulder and a contusion of the right arm between the shoulder and elbow, with an injury to the periosteum of the bone. In the opinion of Dr. Baker, she also suffered a post-traumatic neurosis. This diagnosis was confirmed by Dr. Alden, a specialist in neurology and psychiatry.

The case went to trial upon the amended complaint of plaintiff in which she alleged generally that the defendant operated its stage in such a careless and negligent manner as to cause the suitcase to fall and strike her. Specific negligent acts were also alleged, among them being failure to properly inspect the baggage in the racks. Upon the conclusion of plaintiff's case, the defendant moved for a nonsuit upon the ground that no evidence had been produced to show any negligence on the part of the defendant proximately causing the injury. The

motion was granted, and it is from the judgment of nonsuit that the plaintiff has appealed.

She was the only witness to testify in respect to the happening of the accident, which she describes in the following language from the reporter's transcript: "Q. You describe the movement of the bus as giving you a severe jolt? A. Yes. . . . I didn't take any notice of that except this one curve where the bus had swayed—he was going around this sharp curve and the bus swayed. Q. I thought I understood you to say that it felt like you had run into a rock or something? A. Yes, at that time—everything happened right at the time of the accident. Q. Do you know where the suitcase came from that you say collided with you? A. No, but I would judge it was from overhead because it hit me first on the head. Q. Well, the road was smooth, wasn't it? A. Well, except for the rock it felt——when the bus swayed it gave me this jolt. I believed it hit a rock. Q. Now, you have described that the movement of the bus threw you into the passenger, is that right? A. Not right into her, no, but against her. Q. Over against her. Well, do you know whether that was a violent—— did you feel any violence when it threw you? A. Yes. It felt as though the whole bus had crashed. That is just the feeling it gave me."

▇ Upon a motion for a nonsuit made at the conclusion of the plaintiff's case, the rule is almost axiomatic that the court is bound for the purpose of the motion to accept and treat as true every piece of evidence which tends to establish the plaintiff's case and to reject all which tends to disprove it. ▇ Every reasonable inference must be indulged in plaintiff's favor, and if two reasonable inferences may be drawn from the established facts, one of which is favorable to the case of plaintiff and the other unfavorable, that which is favorable must be accepted and that which is unfavorable rejected. ▇ If, in the present case, it may be as reasonably inferred from the proven facts that the defendant was negligent in the operation of its bus as that it was not, the inference in favor of negligence must be drawn. ▇ Negligence in all cases is but an inference drawn from the proven facts, unless it is the result of a presumption (*Morton* v. *Manhattan Lunch Co.*, 41 Cal.App.2d 70 [106 P.2d 212]), and, upon a motion for a nonsuit such as is here made, the law compels it to be inferred if it is reasonably possible to do so from the proven facts.

Negligence and proximate cause have frequently been inferred from existing circumstances even when no question of nonsuit was involved and where circumstantial evidence was the only means of proof available to the injured party. In *Szopieray* v. *West Berkeley Express & Draying Co.*, 194 Cal. 106 [227 P. 720], a three-year-old child was seen playing at the left hind wheel of a standing dray to which a team of horses had been left hitched and unattended. There was no other vehicle in the vicinity. Shortly thereafter the child was found lying in the street with his leg so badly crushed that it had to be amputated. The court there said: "It would be entering the realm of pure speculation to hold that any other vehicle or cause other than the heavy truck injured the child." In the case of *Alameda County* v. *Tieslau*, 44 Cal. App. 332 [186 P. 398], it was held that the facts surrounding the happening of the accident warranted the inference that the injury was caused by failure of the defendants to maintain lights on a pile of loose rock being used in repair work on the highway. *Barton* v. *Capitol Market*, 57 Cal.App.2d 516 [134 P.2d 847], is also to the effect that circumstantial evidence may be the basis for an inference of negligence and proximate cause.

It is contended by the plaintiff that under the circumstances existing here the doctrine of res ipsa loquitur applies. ■ This is a rule of law designed to equalize the situation when an accident has occurred on account of something under the exclusive management of the defendant. In *San Juan Light & T. Co.* v. *Requena*, 224 U.S. 89 [32 S.Ct. 399, 56 L.Ed. 680], it is said that, "When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care." ■ It does not shift the burden of proof in a case, but presents an inference of culpability which, if left unexplained by the defendant, is deemed satisfactory evidence of his negligence. If the defendant offers an explanation of the occurrence which is entirely consistent with due care, the inference of culpability is dispelled. ■ It is a rule of necessity to be invoked only when necessary evidence is not readily available to the injured party, and where the injury occurs under such circumstances

as, when tested by ordinary experience and observation it may be fairly inferred, in the absence of explanation that the person sought to be charged has failed to fulfill some obligation which he owed to the injured party, he having exclusive control of the operation of the agency producing the injury. The doctrine is applied as frequently in the case of public carriers as in any other class of undertaking. This is because of the very definite obligation which the carrier owes to his passengers to transport them safely. Reason dictates that one who entrusts his life and person to a common carrier to transport him safely to his destination in a vehicle of the carrier's own selection and under the carrier's exclusive management and control is entitled to an explanation of any unusual occurrence connected with the operation of the vehicle which results in injury. This right of the traveller by public conveyance in case of injury was recognized and the doctrine applied in this state in the early case of *Fairchild* v. *California Stage Co.,* 13 Cal. 599, a case reaching the Supreme Court in the July term, 1859. And, as is stated in *Bush* v. *Barnett,* 96 Cal. 202 [31 P. 2], "This rule was very clearly stated in *Boyce* v. *California Stage Co.,* 25 Cal. 460, and has since been affirmed in *Lawrence* v. *Green,* 70 Cal. 417 [11 P. 750, 59 Am. Rep. 428] ; *Treadwell* v. *Whittier,* 80 Cal. [574] 583 [22 P. 266, 13 Am.St.Rep. 175, 5 L.R.A. 498]." The doctrine is again applied in the recent case of *Prunty* v. *Allred,* 73 Cal. App.2d 67 [165 P.2d 935], where a suitcase fell from the baggage rack of a bus, striking a woman passenger on the head, injuring her severely. At the time of the accident the bus was travelling about forty-five miles per hour in passing a truck. As it turned back into its own lane of travel to avoid oncoming traffic, the suitcase fell. The jury was given an instruction on the doctrine of res ipsa loquitur, and in passing upon the propriety of such an instruction the court said: "Under the pleadings and the evidence, an instruction on the doctrine was proper," citing *Leet* v. *Union Pacific Railroad Co.,* 25 Cal.2d 605 [155 P.2d 42, 158 A.L.R. 1008]. In *O'Connor* v. *Mennie,* 169 Cal. 217 [146 P. 674], which involved the fall of an elevator, the doctrine was applied and a judgment of nonsuit reversed.

 No question of negligence on the part of the plaintiff is presented here. No danger was apparent to her, and none under the facts presented could have been. The control and

operation of the bus was exclusively in the hands of the defendant's driver. He was in a position to know if it was the speed of the bus while rounding a sharp curve that caused it to sway, and what it was that caused the bus to jolt violently and with enough force to precipitate the suitcase from the baggage rack. These happenings do not usually occur in the transportation of passengers over the highways by motor coach without negligence on the part of someone. The plaintiff, occupying an aisle seat in the body of the bus, was not in a position to form an accurate estimate as to its speed, nor of the degree of the curve in the highway which it rounded. Nor was she in a position to see what the bus struck. The situation which these facts present, plus her injuries, entitle her to the inference of negligence on the part of the defendant which the doctrine of res ipsa loquitur affords.

In *Prunty* v. *Allred, supra,* the court indicated that two distinct inferences of negligence could be drawn from the facts there established. It said, ''An inference of negligence was permissible from the failure of the bus driver to discharge the duty of inspecting the baggage in the racks and seeing that it was properly stowed and securely placed. It is likewise obvious from the statement of facts that an inference of negligence was permissible from the manner in which the bus was operated. The falling of the baggage was coincidental with the movement of the bus in suddenly coming back into its own lane of traffic after passing the truck.'' The established facts of this case which are similar in many respects to those in *Prunty* v. *Allred* warrant like inferences of negligence on the part of the defendant.

In support of its position the respondent has cited the cases of *Wade* v. *North Coast Transp. Co.* (1931), 165 Wash. 418 [5 P.2d 985], and *Diamond* v. *Weyerhaeuser,* 178 Cal. 540 [174 P. 38]. In the Wade case a piece of baggage fell from the baggage rack in a bus, striking and injuring a child. A jury returned a verdict in favor of the plaintiff, and upon motion the court granted a judgment for the defendant, notwithstanding the verdict. In that case, the driver of a bus rounded a corner at a street intersection and in doing so, passed the left wheels of the bus off of the paved portion of the street. In summarizing the evidence the court there said: ''The undisputed evidence in this case is to the effect that in making the turn from East Marginal Way into Corson Avenue with a bus the size of the one described, it is necessary that

the left wheels thereof pass onto the gravel strip before they reach the pavement on the south side of Corson Avenue.'' On coming back onto the pavement the bus gave a sudden lurch and jerk. This was a forward movement of the bus, and as the court there held, was an incident of its usual operation and not an unusual occurrence under the circumstances. In *Diamond* v. *Weyerhaeuser* a collision occurred between an automobile and a horse-drawn wagon at the intersection of two streets. In sustaining a directed verdict the court said: ''There was a total lack of proof of any circumstances from which it might be reasonably inferred that the collision was caused by any want of care on the part of the driver of the automobile, rather than by the negligence of the driver of the wagon, or by accident without fault on the part of anyone.''

The respondent has pointed particularly to *Creahan* v. *Pennsylvania R. R. Co.*, 123 Pa. Super 268 [187 A. 51], among other cases cited, in which case a judgment was entered for the defendant, notwithstanding a verdict for the plaintiff. In this case, the plaintiff relied solely upon the fact that a satchel fell from a rack and injured her. As the court there said, ''She neither gave nor furnished any evidence to indicate that there was anything defective or of improper construction in the rack, or that the train was operating in a negligent or unusual manner.'' Nor do any of the other cases cited by respondent indicate anything but a usual incident of the operation of the transportation unit as the cause of the injury.

On the other hand, in the case of *Rosenthal* v. *New York, N. H. & H. R. Co.*, 88 Conn. 65 [89 A. 888, 51 L.R.A.N.S. 775], relied on by the appellant, the liability of the defendant was upheld on the ground of an occurrence in the operation of the train out of the ordinary. The court there said: ''In this case the witnesses not only characterized the stop as sudden and violent, but they testified to the physical effect on themselves, as throwing them forward in their seats, and to the simultaneous fall of the suitcase which, according to the testimony, had been securely stowed in the rack before the train started. We think that the jury might reasonably have found that the stop was unusually sudden and caused the suitcase to fall from a position from which it would not probably have been dislodged by the ordinary motion of the train.''

As we have already pointed out, upon a motion for a nonsuit such as was here made, only that evidence which is favor-

able to plaintiff's case may be considered, to the exclusion of all that is adverse. In the case before us the favorable facts and inferences appear ample to make out a prima facie case for the plaintiff.

In our opinion the trial court erred in granting the motion for a nonsuit.

The judgment is reversed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied April 10, 1947, and respondent's petition for a hearing by the Supreme Court was denied May 8, 1947.