[Civ. No. 11613.   Second Appellate District, Division One.—December 9, 1938.]

## JOSEPH FOY, Appellant, v. THEODORE R. CARLTON, Respondent.

Milan Medigovich and Ralph C. Curren for Appellant.

W. I. Gilbert and W. I. Gilbert, Jr., for Respondent.

YORK, P. J.—This is an action to recover damages for injuries sustained by appellant in an automobile accident which occurred at the intersection of Third and Lorraine Streets in the city of Los Angeles on November 27, 1936, at about 7 o'clock in the evening.   At the conclusion of the trial before a jury, the court directed a verdict in favor of respondent on the ground that appellant was guilty of contributory negligence as a matter of law.   Upon this appeal from the judgment which was subsequently entered, appellant urges that the court erred in granting the motion for a directed verdict for the reason that the question of negligence should have been submitted to the jury.

At the point where the accident occurred, Third Street runs east and west, Lorraine north and south, the two streets intersecting at a right angle. Third Street is approximately 60 feet wide and is traversed by two sets of car tracks, one for eastbound and the other for westbound traffic. It is 25 feet from the north curb of Third Street to the most northerly rail of the north car tracks carrying westbound traffic. A safety zone for westbound passengers which is approximately 4 feet wide and 60 feet long is located north of the north car tracks and east of Lorraine Street. Appellant lived on the east side of Lorraine north of Third Street, and immediately before the accident, he was walking south toward Third Street on the sidewalk on the east side of Lorraine. When he reached the curb at the northeast corner of the intersection, he stopped to allow a number of automobiles to pass. As he stepped off the curb he looked to the east and to the west and observed a street car moving east on Third Street west of Lorraine. He also observed respondent's automobile traveling west on Third Street in the north car tracks at a distance of 350 or 400 feet east of the said intersection. Appellant testified that he walked directly across Third Street and when he reached a point which was about 22 feet from the curb and two or three feet from the most northerly rail of the north car tracks, he again observed respondent's automobile, which was then 50 or 60 feet from him, traveling in the north car tracks. Appellant then took another step or two forward, and as respondent's car struck him he "made one step back or wheeled to the side" and was thrown six or seven feet in a northwesterly direction, thereby sustaining severe injuries to his left leg and ankle which have resulted in permanent disability.

Respondent admitted that he did not see appellant until the moment of the impact and that he did not apply his brakes until after the collision. He testified that his speed was 20 to 25 miles per hour, and a witness called in his behalf estimated the speed of his automobile at 30 miles per hour. Appellant testified that in his opinion respondent's speed was 50 or 60 miles per hour. After the collision, respondent swerved south and stopped his car facing south at the southwest corner of the intersection.

The crosswalk leading to the center of the intersection from the northeast corner thereof was not marked at the time of

the accident and there seems to be some question as to whether appellant was walking within or without the confines of said unmarked crosswalk.

In attempting to fix the point of impact, the trial court asked appellant if the end of the sidewalk on the east end of Lorraine and the north side of Third "were connected with the sidewalk on the east side of Lorraine and south of Third street—where would such extension of the sidewalk across Third street be in relation to the point where you were struck?" Appellant answered, "I cannot determine that exact point with the sidewalk over here. You see, the sidewalk curves over here. The Court: Forget that curve. If you extended the sidewalk, started your extension from a point where it starts to curve to the west, and made the extension in line with that across Third street to meet the sidewalk on the east side of Lorraine east of Third street, where would that sidewalk as extended across Third street be in relation to the point where you were struck? A. I walked straight across the street. The Court: That does not answer my question. Maybe this will clear it. In the first place, there is a grass parking between the east curb line of Lorraine and the sidewalk on Lorraine? A. Yes. Q. How wide is that parking space? A. That is 6 or 7 feet, I presume. Q. That is the best of your recollection? A. That is the best of my recollection. Q. 6 or 7 feet? A. Of grass. Q. Now I believe you testified on your examination in chief that you were at a point which is approximately the point where the eastern curb line of Lorraine crosses the north rail of the westbound car track, that is, if extended? A. Yes. Q. Is that correct? A. Yes, sir. Q. Then, if this sidewalk was extended across Third street it would be about 6 or 7 feet east of the point where you were struck, is that correct? A. Yes, sir."

Respondent contends that having in mind that appellant was on the east side of the street going south, his position is definitely fixed at about 6 or 7 feet *outside* an unmarked crosswalk at the time of the impact, and that therefore he should have yielded the right of way to all vehicles upon the roadway in conformity with the terms of section 562 of the Vehicle Code.

Appellant in answer to this urges that the court did not extend the sidewalk across the street from its boundaries

at the curb, but from its boundaries before the sidewalk started to curve to the west; that "It is clear that the sidewalk turned toward the west and toward the east curb of Lorraine, thereby cutting off the 6- or 7-foot parkway which appears between the curb and the sidewalk farther north. Consequently, if we extend the boundaries at the curb the sidewalk would be 6 or 7 feet west of where it would be if you extend the boundaries before the turn. Therefore, we submit, the crosswalk defined by the court was not the crosswalk defined by law, and when the plaintiff said he was 6 or 7 feet west of the crosswalk defined by the court, he was nevertheless in the crosswalk defined by law."

Respondent testified that the impact occurred at a point at least 15 feet west of the imaginary exended curb line of Lorraine Street, and the motorman of the street car which was traveling east on Third Street testified that he saw appellant lying in the intersection after the accident at a point 18 or 20 feet west of the east line of Lorraine.

In granting the motion for directed verdict, the court said: "To my mind the evidence clearly shows that plaintiff was himself guilty as a matter of law of contributory negligence in several respects. In one particular, that he was in a position of safety when he was beyond the safety zone and was protected by it, and he stepped out from the protection thereof to a place of danger, and according to his own testimony the defendant's car was going 50 or 60 miles an hour when it was 60 feet away. Under the law if a man steps from a place of safety into the path of a car going 50 or 60 miles an hour and when it is only 60 feet away, he is guilty of contributory negligence; so assuming for the sake of the motion that the defendant was guilty of negligence, it is also the inevitable conclusion of the court that the plaintiff was guilty of negligence, guilty of contributory negligence which was one of the proximate causes of the accident, and therefore my one instruction to you is that you return a verdict in favor of the defendant."

Regardless of whether appellant was inside or outside the limits of the unmarked crosswalk, his own testimony reveals that he walked directly across the street when he knew a car was approaching him from the east; that when he observed said car approaching at a distance of 60 feet,

traveling on the north car tracks at a speed which appellant estimated to be 50 or 60 miles per hour, he had reached a point in the intersection which was three feet north of the north car tracks and slightly west of the westerly end of the safety zone. His testimony upon cross-examination further reveals that had he walked a few steps squarely to the east at that moment, he would have been within the confines of the safety zone. Instead, he continued to walk forward to the point of impact.

"It is settled in California that the right of a court to direct a verdict is, with regard to the condition of the evidence, absolutely the same as the right of a court to grant a nonsuit; and also that a court may grant a nonsuit when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such a verdict were given. (Citing cases.)

"It is equally well established that 'contributory negligence "is a question of law only when the evidence is of such a character that it will support no other legitimate inference than that in the one case the plaintiff was guilty of contributory negligence. . . . When the evidence is such that the court is impelled to say that it is not in conflict on the facts, and that from those facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of plaintiff contributing to his own injury, then, and only then, does the law step in and forbid plaintiff a recovery. . . . Even where the facts are disputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury." (Citing cases.) . . . ' " (*Rapp* v. *Southern Service Co.*, 116 Cal. App. 699, 702 [4 Pac. (2d) 195].)

While there is a conflict in the evidence with respect to the speed of respondent's automobile as it approached the intersection, appellant's own testimony establishes the fact that he was guilty of contributory negligence, in that he continued to walk forward, knowing that respondent was only 60 feet away, and although he believed that respondent was traveling at a rate of speed which he estimated at that

time to be between 50 and 60 miles per hour. Appellant's conduct showed a total disregard for his own safety.

Giving to appellant's testimony all the value to which it is legally entitled, it is readily apparent that it is of such character that it will support no other legitimate inference than that he was guilty of contributory negligence as a matter of law, and that the trial court did not err when it granted respondent's motion for a directed verdict.

The judgment appealed from is therefore affirmed.

Doran, J., and White, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 6, 1939. Houser, J., voted for a hearing.