[Civ. No. 14174. First Dist., Div. One. Aug. 22, 1950.]

ROBERT RINGO, Appellant, v. RAYMOND W. JOHNSON, Respondent.

Fitzgerald, Abbott & Beardsley for Appellant.

Charles V. Barfield for Respondent.

BRAY, J.—Action for personal injuries brought by a pedestrian against the driver of an automobile which struck him. Plaintiff appeals from a judgment entered on an order granting a motion for nonsuit.

### Questions Presented

While the basic question is whether there is any substantial evidence which would have supported a verdict for plaintiff, that question, in turn, depends primarily upon whether, under the facts, the presumption that plaintiff used due care applied.

### Facts

It is not necessary to detail all of the facts in the case. About 10:30 p. m. plaintiff, a pedestrian, was proceeding in a northerly direction across California Street in San Francisco when he was struck by an automobile operated by defendant, who was driving westerly along said street. At the place in question there is no marked crosswalk. It was defendant's contention that plaintiff was crossing the street outside of the crosswalk area and hence defendant had the right of way. Defendant so testified, and so did plaintiff. Defendant testified that when he saw plaintiff, defendant was 25 feet west of the westerly property line of Spruce Street; that plaintiff came from behind an approaching streetcar and was about 10 feet in front of defendant's car; that defendant stopped his car around 15 feet after hitting plaintiff, and that when he hit plaintiff, plaintiff landed on the top of the car's hood and fell to the street; that he did not carry the body forward at all; that when his car stopped, plaintiff lay in the street approximately 15 feet behind the rear end of the automobile. A bystander and defendant carried plaintiff directly over to the sidewalk, placing him at a point which was 35 or 40 feet west of the west property line

of Spruce Street. The person who helped carry plaintiff did not testify. Later other witnesses saw plaintiff in that spot.

A witness who arrived shortly after the accident testified that he found a pair of glasses (identified as plaintiff's) at the curb at a point which he marked on a photograph of the scene. They were at the northwesterly corner of the intersection where the curve of the curb starts to straighten out. This would be on a line with the property line at or near the westerly extremity of the crosswalk and about 35 feet easterly of where defendant claims plaintiff was when struck.

Plaintiff's testimony was vague and contradictory, due to difficulty in expressing himself, a difficulty which had existed prior to the accident. Since the accident he had had more difficulty in expressing himself and making himself understood as "his nerves are completely shot."

Concerning whether he crossed at the crosswalk, plaintiff testified: "I really don't remember whether I crossed at the intersection or I crossed, cut the corner, like . . ." He was asked where he was with reference to the pedestrian crossing when he started across California Street. He replied, "I don't remember, I don't know." Again: "Q. Now, Mr. Ringo, you told your attorney—one of your attorneys, Mr. Myers, didn't you, that you didn't know whether you were crossing in the crosswalk or outside of the crosswalk, is that right? A. Yes, sir. Q. You told him you couldn't remember whether you were in the crosswalk or not, is that right? A. Between the crosswalk and about the middle—the middle of the—it is where they stop and let people off the street car, in between there some place. Q. You mean the safety zone there on the south side of California Street? A. Yes, sir, the south side." He was then shown a photograph of the intersection, and marked on it the point at which he crossed, stating that it was "in between the middle and the place—and the place where the people turned, where the people cross, where the people cross." His testimony and his marking of the photograph (he later marked where he was when hit) show that he started from the safety zone which was west of the west end of the crosswalk and that he was also westerly of the latter when struck. In marking the photograph as to the point where he was struck, he said: "I can't remember exactly, but a little further than that, about there (indicating)." He later testified: "Q. Well, now, is it not a fact, Mr. Ringo, that you know you were not crossing in the crosswalk at the time of this accident? A. I wasn't crossing in the crosswalk, no, but I was

crossing about the middle of the—I don't know, I mean my—crossing in the middle of the—in the middle of the safety zone, then I—then I crossed over that way."

Concerning whether he looked to his right or east before starting to cross California Street, his testimony is likewise confused. He first said: "I looked at the car I just got off. I looked, I saw the lights, I guess the lights shining on the street, and I thought I got a glimpse of the lights shining on the street, so then I just crossed, to get across the street. Q. I see. Then were you hit by the automobile? A. Yes, sir." Inasmuch as after getting off the car which was on the northerly side of the street, plaintiff crossed to the southerly side, looked at an excavation there before he started to cross back, it is difficult to understand what is meant by seeing lights shining on the street. The streetcar meantime had gone west a few blocks and apparently was coming back. Plaintiff testified that before starting back he saw the lights of the streetcar coming towards him from the west. (Defendant came from the east.) He later testified: "Q. —you say that before you started to cross the street, you looked to your left, or to the west, and you saw a streetcar coming down there? A. I never turned to the left, I might glance a little to the left, so I could see the headlights of any car. You can generally see the headlights coming—coming. I didn't know it was a car, exactly, but I knew a car was coming, and I had enough time to cross over. I saw the headlights. Q. You are talking about a streetcar coming from the west? A. And the car was coming a little bit behind the streetcar, I think. Q. An automobile came from the west behind the streetcar? A. I imagine so, I didn't see it. Q. This is an automobile that was coming from the west? A. No, not from the west. Pardon me. From the east to the west. Q. That was while you were on the sidewalk, was it? A. No, I was crossing the—crossing the street. Q. Well, now, are you telling us that you looked to the east before you started to go across the street? A. I didn't look to the east, I saw the headlights of the car coming from the east and started to walk across the street then. Q. What did you see, the headlights of a streetcar or what? A. Automobile or streetcar, I knew something was coming and I had to hurry up and walk across. Q. Coming in which direction, from east to west or west to east? A. From east to west." In his deposition he positively stated that he did not look to the east at all as the "quickest place

to get hit from a car is coming from the west.'' When asked if he saw defendant's automobile any time before the accident he said he saw the headlights. He then denied that he had not looked to the east before the accident happened. On redirect examination his counsel asked if he could remember exactly what happened at the scene of the accident and he replied, ''No, because after I was hit, I became very emotional, and I couldn't help it, I just got emotional, I don't know what happened exactly, I know what happened before.'' Admittedly he received no head injury. He had previously testified: ''Q. . . . Then were you hit by the automobile? A. Yes, sir. Q. Do you remember anything after that at all? A. Not too much, no.''

Defendant moved for a nonsuit on the ground that the evidence affirmatively showed that plaintiff was guilty of contributory negligence as a matter of law. The court granted the motion. Plaintiff contends that there was evidence from which a jury could have found that plaintiff was crossing in the crosswalk. The question of whether he was in the crosswalk is of prime importance, for if he were he would have the right of way. (Veh. Code., § 560.) He contends, first, that from his confused testimony the jury could have inferred that he actually was in the crosswalk when hit. We have set forth all his testimony on the subject and it is apparent that nowhere did he say he was in it. In fact he positively stated that he did not cross at the crosswalk and the line he drew on the photograph demonstrates it.

Secondly, plaintiff contends that there was other evidence that plaintiff was in the crosswalk when hit. This is based upon the testimony of the witness Smith that he found plaintiff's glasses at or in the crosswalk and some 30 to 35 feet behind the point which defendant testified was the point of impact. Defendant testified that plaintiff walked into the side of the car, was cast up on top of the hood, rolled off and fell at practically the point of impact. Plaintiff contends that this testimony is inherently improbable, and, coupled with the place where the glasses were found, shows that plaintiff was in the crosswalk when hit. The testimony of the police officer was that the left front headlight was damaged, as well as the top of the hood, which would indicate that defendant was mistaken when he said plaintiff walked into the side of the car. However, there was nothing in this testimony that justified the claimed inference that plaintiff was in the crosswalk. Everything that plaintiff claims pointed towards

plaintiff being in that position was merely surmise or conjecture. The same is true as to the location of the glasses. No one can say where glasses will end up when their wearer is struck and thrown to the hood of a car and then off, as occurred here; and to determine that the mere fact that the glasses were found in a particular place is sufficient proof to justify a finding that he was hit at that place would be to base such a finding on mere surmise or conjecture.

Thirdly, plaintiff contends that in view of his confused way of testifying and his claimed lack of memory the jury was entitled to weigh, against his own testimony, the presumption that he used due care, and that the conflict between the presumption and his testimony was sufficient to send the case to the jury. This brings us to the question of when a plaintiff is entitled to the benefit of the presumption.

Where a plaintiff is unable, because of loss of memory, to testify to his own conduct, the presumption applies as a species of evidence. See *Douglas* v. *Hoff*, 82 Cal.App.2d 82 [185 P.2d 607]—where the plaintiff "lost all remembrance of the circumstance of her accident and . . . was unable to relate how it happened" (p. 84); *Satariano* v. *Sleight*, 54 Cal.App.2d 278 [129 P.2d 35]—where plaintiff "suffered a brain concussion and remembered nothing of what had happened after leaving the gymnasium" before the accident (p. 280); *Hoppe* v. *Bradshaw*, 42 Cal.App.2d 334 [108 P.2d 947]—where plaintiff in the accident sustained a "brain injury [which] resulted in a loss of memory to such an extent that he had no recollection of any of the incidents" from a time prior to the accident (p. 337); *Scott* v. *Sheedy*, 39 Cal. App. 96 [102 P.2d 575]—where the plaintiff had received a brain injury in the accident and testified that he could not tell anything about how the truck which struck him came into the opening of a barricade he was guarding.

There are many cases holding that the presumption of due care may be weighed against other evidence where the plaintiff is dead and hence cannot testify. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 P. 529]; *Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590].)

We have been able to find no case, nor have we been cited to one, which holds that a plaintiff is entitled to the benefit of the presumption of due care where his own testimony is directly contradictory to it. The presumption may be in-

voked by a party when "his evidence is not inconsistent therewith." (*Smellie* v. *Southern Pac. Co., supra,* p. 555.) The presumption gives rise to a conflict in the evidence "unless the presumption on the one hand is irreconcilable with the evidence on the other hand" said the court in *Mar Shee* v. *Maryland Assurance Corp.,* 190 Cal. 1, at page 9 [210 P. 269]. The test is there stated: ". . . a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case." As to the presumption in question here, this test is approved in the Westberg case, *supra,* page 365.

Applying such test to the facts of our case, it appears that plaintiff's own testimony as well as that of defendant dispels the presumption because it shows that he was not crossing the street within the crosswalk. Nor can plaintiff bring himself within the exception above mentioned "that the testimony is the product of mistake or inadvertence" by saying, as he did, that he "didn't remember." While he repeated such an expression, he positively testified more than once that he was not within the crosswalk. In fact, when he was showing on the photograph where he crossed the street, while saying he did not "remember exactly" he moved the point "a little further than that, about there. . . ." We can find no case where the presumption remains in the case after uncontradicted evidence to the contrary, merely because the plaintiff uses the expression "I don't remember" in connection with his own testimony showing that he did remember. As said in *Mundy* v. *Marshall,* 8 Cal.2d 294, 296 [65 P.2d 65]: "The manner in which the decedent was crossing the street having been covered by the plaintiff's own evidence, there is no room for the operation of the presumption that he was exercising due care (*Paulsen* v. *McDuffie,* 4 Cal.2d 111 [47 P.2d 709]), and it cannot be relied upon to establish a conflict in the evidence." As said in *Paulsen* v. *McDuffie,* 4 Cal.2d 111, 119 [47 P.2d 709]: "It is difficult to see how there was any place for a presumption as to the plaintiff's conduct. What he did on that occasion was entirely covered by the evidence in the case, and there was neither necessity nor reason for indulging in any presumption upon that subject."

While plaintiff's aunt testified that since the accident plain-

tiff had a great deal more difficulty in expressing himself and making himself understood, the difficulty is not that, because although his testimony was somewhat confused and he several times repeated that he did not remember, his testimony showed that he did remember and the one thing he did make clear was that he did not use the crosswalk. Moreover, plaintiff also made it clear that he did not look to the east before crossing the street. Under such circumstances it has been held that a pedestrian is guilty of contributory negligence as a matter of law. (*Weissman* v. *Seehusen,* 55 Cal.App.2d 391, 393 [131 P.2d 10]; *White* v. *Davis,* 103 Cal.App. 531, 542 [284 P. 1086].)

 Taking every favorable inference and presumption properly arising from the evidence, and weighing the evidence in the light most favorable to plaintiff, as we are required to do in passing upon an order granting a nonsuit (*Williamson* v. *Pacific Greyhound Lines,* 78 Cal.App.2d 482 [177 P.2d 977]) we are unable to find any evidence which would support a finding in favor of plaintiff, and hence the nonsuit was proper. While the burden of proof of the issue of contributory negligence is on the defendant, the evidence of plaintiff shows as a matter of law that he was contributively negligent. (See *Weissman* v. *Seehusen, supra* [55 Cal.App2d 391]; *Foy* v. *Carlton,* 29 Cal.App.2d 575 [85 P.2d 220].)

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.